115 N.J. Super. 213 (1971)
278 A.2d 543
STATE OF NEW JERSEY, PLAINTIFF,
v.
JOSEPH WATSON, DEFENDANT.
Superior Court of New Jersey, Hudson County Court.
Decided June 11, 1971.
*214 Mr. James Flynn, Deputy Public Defender, argued the motion for defendant (Mr. Richard Sonntag, Deputy Public Defender, of counsel).
Mr. Howard Pfeffer, Assistant Prosecutor, argued for the State (Mr. Geoffrey Gaulkin, Prosecutor; Mr. Kenneth Blane, Assistant Prosecutor, of counsel).
McFARLAND, J.D.C. (temporarily assigned).
After a trial by jury on April 22, 26, 27, 1971, defendant was convicted of contributing to the delinquency of a minor. He is a married man with five children by his wife. He has also fathered three children by the complaining witness, Maude Watkins. He is over 40 years old and has no criminal convictions except a recent plea in New York to a similar charge. He proclaims his innocence as to both the New York and New Jersey charges.
*215 On May 3, 1971 the prosecutor, in support of a motion to revoke defendant's release in custody of the probation department, submitted the sworn affidavit of Maude Watkins that defendant had threatened her life. After accepting (without allowing cross examination) defendant's testimony and that of one other witness for him, the court remanded defendant to the Hudson County jail pending sentence. Defendant himself added to his strong denial of the charge an offer to submit to a lie detector test. The polygraph examination was held and, in the opinion of the examiner, defendant is telling the truth in stating that he did not threaten Maude Watkins. It follows that Maude Watkins is not telling the truth.
Defense counsel then made a formal motion for judicial acceptance of the polygraph test in post-conviction matters before the court. The prosecutor, who had never consented to the use of the test, objects, contending this would be contrary to law. He does acknowledge the usefulness of the polygraph as an investigatory tool, and also the qualifications of the examiner, Sergeant John Lyng, who performs most of his tests for the Jersey City Police Department in investigations that take place before arrest or charge.
For reasons not material to this opinion, the court refuses to release defendant before the required Menlo Park examination, so that the sole question remaining is whether the court can accept the polygraph report in its presentence consideration.
The Supreme Court of New Jersey does not hesitate to admit evidence obtained through the use of scientific aids, State v. Walker, 37 N.J. 208 at 215 (1962) citing cases regarding radar, fingerprints, blood grouping. The court does not give the same judicial recognition to a polygraph examination. It sums up its position as follows:
We do not now express any opinion as to whether the results of a lie detector test should under all circumstances, be excluded in criminal cases. It is enough for us to say that in the circumstances of the present case the trial court did not err in its ruling. [at 217]
*216 The situation in State v. Walker was an offer to submit to a polygraph test during the heat of a jury trial, provided the results could be used in evidence. What the trial judge banned was a forced imposition on the prosecutor of evidence that both he and the court might believe was of no benefit and would prejudice the jury.
Certain prosecutors have confidence in polygraph tests and are quite willing to allow the result of a polygraph to determine whether they should prosecute or dismiss, and such a stipulation has been held valid and enforceable. Butler v. State, 228 So. 2d 421, 36 A.L.R.3d 1274 (Fla. App. 1969). In that case defendant and the state, shortly after the initial indictment, agreed that he would take a polygraph test and each party would rely on the test results. The initial indictment was nolle prossed on the basis of the test, but defendant was later reindicted and convicted. This conviction was set aside in Butler.
It is quite reasonable that counsel and trial courts be either proponents or opponents of polygraphs. The judicial use of opinions based upon polygraph examinations should not usurp the constitutional right of all parties to have a fair, unprejudiced jury trial.
Our courts have decided that a defendant may not tell the jury that he offered to submit to a lie detection test if the State would stipulate that the results would be evidential, State v. Peetros, 45 N.J. 540 (1965); the prosecutor may not refer to defendant's failure to submit to a polygraph, State v. Driver, 38 N.J. 255 (1962); State v. LaRocca, 81 N.J. Super. 40 (App. Div. 1963); a defendant who submitted to the test but not its admissibility was prejudiced by testimony indirectly showing the result thereof, State v. Arnwine, 67 N.J. Super. 483 (App. Div. 1961); the result of a lie detector test of a witness being brought before the jury is error, such test not being consented to by defense counsel, State v. Parsons, 83 N.J. Super. 430 (App. Div. 1964); the introduction of the test *217 without consent was denied in a trial de novo, sustained in State v. Emery, 27 N.J. 348 (1958).
All these cases are in conformity with the present status of the law in the United States as I understand it, and as the trial judge understood it in State v. Kavanaugh, 52 N.J. 7 (1968). The cases presented to our appellate courts have two distinguishing characteristics: first, the test was proposed for use in the trial, second, there was no consent by opposing counsel or the trial judge. Of course, the accuracy of a lie detector test depends upon proper administration by a competent examiner in a proper setting. In the opinion of Richard O. Arthur, nationally known polygraph expert, based upon a five-year study his polygraph technique achieves an accuracy of 96%, with a 3% margin of indefinite determinations and a 1% maximum possible error. "The Polygraph: An Invaluable Judicial Aid," 50 A.B.A.J. 1130 (1964).
Opinion testimony based upon an early pathometer (lie detector) was admitted in evidence for the accused as early as 30 years ago People v. Kenny, 167 Misc. 51, 3 N.Y.S.2d 348 (Sup. Ct. 1938). Thereafter, the New York Court of Appeals ruled that without proof tending to show general scientific recognition that the pathometer possesses efficacy, it is not error to exclude expert testimony based upon it. People v. Forte, 279 N.Y. 204, 18 N.E. (2d) 31 (1938).
I would respectfully suggest that the confidence our text-book writers have in polygraph tests  see McCormack, Evidence § 174 (1954)  is lately achieving recognition in the courts.
In Carpinelli v. Manhattan Bottling Corp., 21 A.D.2d 792, 250 N.Y.S.2d 756 (App. Div. 1964) defendant in a negligence action made a motion before trial to examine the infant plaintiff by psychogalvanic skin reaction tests. The motion was denied. However, the Appellate Division held that the motion should have been granted with certain prescribed safeguards. Admissibility of the evidence would ultimately rest in the discretion of the trial judge, and the exercise of his discretion would depend upon "the reasonable *218 certitude of such findings and results." The court also stated: "It is not disputed that these tests are of some value, at least for research purposes, and they may result in important evidence of the infant plaintiff's condition."
See also Habersham v. Grimaldi, 18 App. Div.2d 615, 234 N.Y.S.2d 599 (App. Div. 1962), requiring submission to a galvanic skin response in connection with tests of hearing.
I am not suggesting that the Carpinelli and Habersham cases are a sound application of the law in criminal cases. On the contrary, they authorize lie detection devices to be used in an undesirable way, because they permit one party to force another party to submit to a test for possible use in a trial.
Prosecutors do not normally take a position on sentencing, or on even the contents of the presentence report. But they have a right to do so. This practice has developed through recognition of the court's primary responsibility. I am holding that after trial, expert testimony based upon a polygraph test examination will be admitted for consideration on behalf of a defendant who voluntarily takes a test, to show facts not decided by the trial jury or material to their deliberations  for example, to show his attitude, obedience to instructions of the court, and disprove accusations that he has not been tried for.
Sentencing is a heavy responsibility for the court. The State and defendant no longer have the adversary rights they had during the course of the trial. My duty is to have the best available information concerning every aspect of the defendant's life. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).
Recognizing the need for safeguards, I will condition my ruling by accepting from the prosecutor any of the following: an opinion of any person who disputes the reliability of the polygraph, a reexamination of defendant before another qualified polygraph expert; a polygraph examination of Maude Watkins. Those examinations are to be restricted to the subject matter of the prior examination of defendant unless he consents to enlargement of the examination.