Samuel D. ALLEN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1279A341.

Court of Appeals of Indiana,
First District.

June 23, 1980.

Thomas Lockyear, Evansville, for defendant-appellant.

Theo. L. Sendak, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Samuel D. Allen appeals his conviction and sentencing in the Posey Circuit Court for attempted theft.

We affirm.

## STATEMENT OF THE FACTS

At approximately 12:30 or 12:45 P.M. on October 9, 1978, a man entered a branch of the Cynthiana State Bank at St. Wendel, Indiana. He was wearing bib overalls and a light-colored shirt, with some kind of padding stuffed under his shirt. Ruby Bernice Fleener, cashier and manager of the bank branch, asked whether she could help him. He touched his lips as if to indicate he could not speak and then proceeded to move his finger on the counter top as if he were writing. Mrs. Fleener gave him a piece of paper and a pencil, and he began to write. A woman customer entered the bank at that time, and the man moved to another teller's window and continued writing.

Diane Angermeier, another bank employee, went to the teller's window where the man was standing, and he handed her the note. She read the note and stepped back. Mrs. Fleener walked over to her and read the note, which said, "Help. There are three guns pointed at us. Give me money."

Mrs. Fleener asked where the guns were, and the man responded by pointing to a vacant house across the road. She then asked how many guns there were. He held up three fingers. When she inquired where his car was, he pointed down the road. Mrs. Fleener then said, "I don't have any money for you." The man shrugged his shoulders and walked out of the bank and then went across the road, up a driveway, and through a plowed field. At trial, both Ruby Fleener and Diane Angermeier identified the defendant as the man who had handed the note to Mrs. Angermeier.

At 12:50 P.M. on October 9, 1978, Indiana State Trooper Larry Rudolph apprehended Samuel D. Allen on eastbound Interstate 64 for speeding. Trooper Rudolph had just heard over the radio that another trooper had been dispatched to the bank. So after issuing a citation to Allen, he drove to the bank to lend assistance, travelling the eight miles to the bank in nine minutes. At trial, Trooper Rudolph identified Allen as the man he had stopped for speeding.

Allen was charged with attempted robbery [1] and was convicted in a jury trial of the included offense of attempted theft,[2] a class D Felony. He was sentenced to four years' confinement with all but two years suspended on the condition that he maintain good behavior.

## ISSUES

1. Whether or not the trial court erred in overruling Allen's motions for judgment on the evidence at the conclusion of the State's case and at the conclusion of all of the evidence.

2. Whether or not the trial court erred in refusing to give Allen's tendered instruction concerning an inference arising when the State fails to call certain witnesses.

---

1. IC 1971, 35–41–5–1 and 35–42–5–1 (Burns Code Ed., Repl. 1979).

2. IC 1971, 35–41–5–1 and 35–43–4–2 (Burns Code Ed., Repl. 1979).

3. Whether or not the trial court erred in refusing to admit into evidence at the sentencing hearing a report made in connection with a polygraph test administered to Allen.

## DECISION

We note at the outset that the State's appellee's brief was filed after the expiration of the thirty-day period provided in Ind.Rules of Procedure, Appellate Rule 8.1(A). Consequently, Allen need only make a *prima facie* showing of error in order to win a reversal. *See: Morris v. City of Evansville,* (1979) Ind.App., 390 N.E.2d 184; *Colley v. Carpenter,* (1977) Ind.App., 362 N.E.2d 163.

*Issue One*

Allen urges us to review the evidence favorable to the State to determine whether or not it is sufficient to support his conviction of attempted theft. Although he acknowledges that two of the State's witnesses identified him at trial, he points out that Judy Ann Will, another bank employee, could not identify him and that the State did not call any of the customers in the bank as witnesses. Allen asserts that neither the latent fingerprint examiner nor the handwriting examiner who gave expert testimony was able to connect Allen with the crime. He also emphasizes that the fingerprints of Mrs. Fleener, Mrs. Angermeier, and Miss Will were not compared with the fingerprints which appeared on State's Exhibit No. 6, the note which Allen allegedly wrote in the bank.

■■■ However, the applicable rule is that "[a] directed verdict of acquittal is given only if there is a complete lack of evidence on some essential element or if the evidence supports only one inference and that inference is in favor of the defendant." *Estep v. State,* (1979) Ind., 394 N.E.2d 111, at 114–115. Furthermore, as Allen apparently realizes, when the issue of sufficiency of the evidence to support a conviction is raised on appeal, we will neither weigh the evidence nor determine the credibility of witnesses. Instead, we will consider only the probative evidence which is most favorable to the State, together with all reasonable inferences drawn therefrom, and if from that evidence and those inferences a reasonable trier of fact could find the existence of each element of the crime beyond a reasonable doubt, we will affirm the conviction. *Thompson v. State,* (1979) Ind., 386 N.E.2d 682; *Perkins v. State,* (1979) Ind. App., 392 N.E.2d 490.

■■■ Both Mrs. Fleener and Mrs. Angermeier testified unequivocally that Allen was the man who had given them the note demanding money. It has been held that "the testimony of a single eye witness can be sufficient to sustain a conviction. . . ." *Hill v. State,* (1979) Ind., 394 N.E.2d 132, 135; *accord, Lewis v. State,* (1976) 264 Ind. 288, 342 N.E.2d 859. Identification is apparently the only aspect of the evidence which Allen is challenging. Were we to be influenced by Miss Will's inability to identify Allen or by the State's failure to call other witnesses or to connect Allen to the crime by expert testimony, we would most assuredly be weighing the evidence, in light of the testimony of Mrs. Fleener and Mrs. Angermeier. We find that there was sufficient probative evidence that Allen committed the crime to sustain the trial court's overruling of Allen's motions for directed verdict and the jury's determination of Allen's guilt.

*Issue Two*

Allen next asserts that the trial court erred in refusing to give the jury Defendant's Instruction No. 1, which reads as follows:

"If it is within the power of the prosecution to produce a witness who could give material testimony on issues in this case, failure to call that witness gives rise to an inference that such testimony would be unfavorable to the prosecution.

"The jury must always bear in mind that the law never imposes on the defendant in a criminal case the burden or duty of calling witnesses or producing any evidence."

Allen maintains that Oda Cooper and Lenora Boyd were shown to have been present in the bank branch at the time of the incident in question, and yet the State did not call them to testify at trial. He further contends that the record does not indicate any attempt by the State to show that these witnesses were equally available to the State and to him. He believes that Defendant's Instruction No. 1 correctly stated the law, was supported by the evidence, and was not covered by other instructions, and, hence, should have been given to the jury because it met the requirements of *Davis v. State*, (1976) 265 Ind. 476, 355 N.E.2d 836. Allen does not cite any authority, however, to support his assertion that his tendered instruction correctly stated the law.

Our examination of the record reveals that on January 3, 1979, Allen filed a pre-trial discovery motion which requested, *inter alia*, the names and addresses of all witnesses upon whom the State intended to rely, a list of witnesses upon whom the State intended to rely at trial and who had given any statements, copies of any such statements, and any criminal records of the State's prospective witnesses. An order book entry of the same date indicates that the court sustained the motion and ordered the State to make its file available to the defendant that day.

It is established that

"the trial court commits no error when it refuses to instruct the jury as to the effect of the State's failure to produce known witnesses where the defendant had access to all of these witnesses and could have called them as his own witnesses. *Gatchett v. State*, (1973) 261 Ind. 109, 300 N.E.2d 665."

*Smith v. State*, (1979) Ind., 388 N.E.2d 484, 487; *accord Armstrong v. State*, (1967) 248 Ind. 396, 229 N.E.2d 631. Furthermore, with regard to an instruction similar to Defendant's Instruction No. 1, the Supreme Court has said:

"The defendant admits that a defendant is not generally entitled to such an instruction when the State fails to produce a witness but submits that he was so entitled in this case, because of the State's prior indication that the witnesses would be called. We do not agree. The defendant had copies of the statements of such witnesses. If such statements were favorable to him, it was his responsibility to call them. There is nothing in the record to indicate that the witnesses were either available or unavailable. Neither is there anything in the record to indicate that the witnesses, if available to the State, were not equally available to the defendant. He made no claim of surprise nor did he request a continuance in order to subpoena such witnesses."

*Gordy v. State*, (1974) 262 Ind. 275, 279, 315 N.E.2d 362, 365. Moreover, the United States Court of Appeals for the Eighth Circuit has said that such an "absent witness" instruction is unwarranted unless the defendant shows that the government alone has the ability to produce the absent witness. *United States v. Anders*, (8th Cir. 1979) 602 F.2d 823; *United States v. Kirk*, (8th Cir. 1976) 534 F.2d 1262; *Walker v. United States*, (8th Cir. 1974) 489 F.2d 714, *cert. denied*, 416 U.S. 990, 94 S.Ct. 2399, 40 L.Ed.2d 768.

█ Allen has made no attempt to show that only the State could have produced Mr. Cooper and Ms. Boyd at trial. Neither has he directed us to any place in the record which speaks to the availability of these witnesses. At the omnibus hearing Allen indicated that the State had not provided him with a copy of the handwriting analysis or its response to his alibi notice. No mention was made, however, of any difficulty in discovery of the State's witnesses. At trial, counsel for Allen indicated that he was aware that Mr. Cooper and Ms. Boyd had allegedly witnessed the incident, and yet he made no attempt to obtain a continuance of the case so that he could subpoena them. Allen would, in effect, have us hold that the State has the burden of showing the availability of any of its potential witnesses whom it does not call to testify. This we will not do. We hold that the trial court properly refused Defendant's Instruction No. 1.

*Issue Three*

Allen assigns as error the refusal of the trial court to admit into evidence at his sentencing hearing a report of a polygraph test administered to him prior to his trial. He contends that the purpose of the polygraph test was to determine whether or not there existed mitigating circumstances or circumstances favoring probation and suspension of sentence.

In Indiana the results of a polygraph examination of a witness or a party are inadmissible in a criminal prosecution absent a waiver or a stipulation by the parties. *Pavone v. State*, (1980) Ind., 402 N.E.2d 976; *Williams v. State*, (1978) Ind., 375 N.E.2d 226; *Tope v. State*, (1977) 266 Ind. 239, 362 N.E.2d 137, *cert. denied*, 434 U.S. 869, 98 S.Ct. 209, 54 L.Ed.2d 146. These restrictions upon the use of polygraph test results arise from the Supreme Court's concern that the test is not sufficiently accurate, *Vacendak v. State*, (1976) 264 Ind. 101, 340 N.E.2d 352, *cert. denied*, 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125, and that "the jury will give undue weight to the validity of such examinations." *Williams v. State*, 375 N.E.2d at 227. However, the strict evidentiary rules which apply at trial do not govern sentencing. *Hineman v. State*, (1973) 155 Ind.App. 293, 292 N.E.2d 618.

The polygraph report contains the following pertinent information:

"TEST CONSTRUCTION:

TEST I:

1. Regarding your alleged involvement in the attempted robbery of the St. Wendel Bank, do you intend to answer each question about that truthfully?
ANS: YES

2. On the day in question, were you in the St. Wendel Bank?
ANS: NO

3. Did you attempt to rob the St. Wendel Bank?
ANS: NO

4. On the day in question, did you go into the St. Wendel Bank with the intention of robbing it?
ANS: NO

TEST I RESULTS:

Examinee mainfested no physiological responses normally indicative of deception in regards to any of the relevant test questions.

TEST II:

1. Regarding your alleged involvement in the attempted robbery of the St. Wendel Bank, do you intend to answer each question about that truthfully?
ANS: YES

2. On the day in question, were you in the St. Wendel Bank?
ANS: NO

3. Did you attempt to rob the St. Wendel Bank?
ANS: NO

4. Do you know who attempted to rob the St. Wendel Bank?
ANS: NO

TEST II RESULTS:

Examinee manifested no physiological responses normally indicative of deception to any of the relevant test questions.

CONCLUSIONS:

In the opinion of the Examiner, Examinee was truthful in his answers to all relevant test questions."

It is readily apparent that the questions posed to Allen during the polygraph examination were directed to his participation in and knowledge of the crime with which he was charged. However, it is elementary that the issue of guilt is decided before the sentencing hearing begins, *Hineman v. State, supra*, and that the sentencing judge is entitled to presume that he or she is sentencing a guilty person, *Snyder v. State*, (1978) Ind., 373 N.E.2d 1101.

The question of whether or not the results of a polygraph test are admissible at the sentencing hearing is apparently one of first impression in Indiana. The Michigan Court of Appeals held with regard to a polygraph test that there "was no relevance, for sentencing purposes, to defendant's answers to questions concerning his guilt." *People v. Towns*, (1976) 69 Mich. App. 475, 478–479, 245 N.W.2d 97, 99. On

the other hand, a New Jersey court held that

> "after trial, expert testimony based upon a polygraph test examination will be admitted for consideration on behalf of a defendant who voluntarily takes a test, to show facts not decided by the trial jury or material to their deliberations—for example, to show his attitude, obedience to instructions of the court, and disprove accusations that he has not been tried for."

*State v. Watson*, (1971) 115 N.J.Super. 213, 218, 278 A.2d 543, 546.

■ Because the questions which Allen answered during his polygraph test went only to the issue of his guilt or innocence of the crime charged and did not reflect upon his attitude, background, character, or other criteria which may be considered in sentencing under IC 1971, 35–50–1A–7 (Burns Code Ed., Repl.1979),[3] we hold that the trial court properly refused to permit Allen to introduce his polygraph results into evidence at the sentencing hearing. We will not permit a convicted defendant to relitigate at the sentencing hearing the question of his guilt or innocence. We need not and do not decide today whether or not there may be circumstances in which polygraph test results would be admissible at a sentencing hearing.

■ Allen also argues under this issue that, although his conviction was for attempted theft rather than for attempted robbery, the original charge, the sentencing judge erroneously found that "the crime involved the threat of force and was of such a nature that it could have threatened the security of one or more persons." We fail to see how this argument is related to the issue of the admissibility of the polygraph test results. Furthermore, we can find no indication that Allen brought this matter to the attention of the trial court in his motion to correct errors. Consequently he has

waived this issue. Ind.Rules of Procedure, Trial Rule 59(G) (1970);[4] *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411; *Dawson v. State*, (1975) 163 Ind.App. 493, 324 N.E.2d 839, *trans. denied.*

Allen has failed to make a *prima facie* showing of error.

Judgment affirmed.

ROBERTSON, P. J., and NEAL, J., concur.

---

3. Ind.Code 35–4.1–4–7 (Supp.1979).

4. Trial Rule 59 was amended effective January 1, 1980, but the pre-amendment version governs Allen's motion to correct errors, which was filed on August 24, 1979. We observed that Allen would also be deemed to have waived this issue under the current versions of TR. 59 and Ind.Rules of Procedure, Appellate Rule 8.3(A)(7).