Kenneth E. GROSSENBACHER,
Appellant,

v.

STATE of Indiana, Appellee.

No. 484 S 154.

Supreme Court of Indiana.

Oct. 12, 1984.

Barrie C. Tremper, Chief Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Cheryl L. Greiner, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Kenneth E. Grossenbacher was convicted by a jury in the Allen Circuit Court of class B felony robbery on October 27, 1983. The trial court subsequently sentenced him to twenty (20) years imprisonment. Appellant now directly appeals and raises the following two issues:

1. assistance of trial counsel; and

2. propriety of in-court identifications.

The facts adduced during trial show that the Sizzler Restaurant on East Tillman Road in Fort Wayne was robbed on January 3, 1983. Eric Dellinger testified that he was working in the restaurant at approximately 9:45 p.m.—45 minutes after it had closed for business—when a man entered wearing a nylon stocking over his head, pointed a gun at him and forced him into the office where the man ordered the supervisor to empty the restaurant's safe. Upon taking the restaurant's money, the robber ordered everyone to lie face down on the floor. Employee Patti Rauch testified that the robber pointed a gun at her and told her to lie down on the floor. Brian Peck also testified that while working, he was ordered to lie on the floor. Jeffrey Stellhorn, the supervisor, testified that the robber pointed a gun in his face and demanded the store's money which he put into a "doggy bag" marked "Monday" and a Lincoln Bank deposit pouch and gave to the robber. Each of these witnesses testified how the robber looked to them while in the restaurant committing this crime. Each testified that the robber had dark hair and was wearing blue jeans, a bluish plaid shirt and a stocking over his face. Dellinger, Peck and Stellhorn testified that the robber had a mustache while Rauch said that she thought that he had one but was not positive because of his mask. Dellinger and Rauch noticed that the robber had "strange" eyes which corresponds to the fact that Appellant was cross-eyed as a child and now is blind in one eye. Dellinger, Peck and Stellhorn each testified that the robber's shoes were brown and "leathery" or suede. Rauch and Peck testified that the robber was of medium build and of relatively short stature. At trial, each of these witnesses identified Appellant as the man who robbed the Sizzler Restaurant. Fort Wayne police officer Gregory Lewis testified that he and his partner stopped a green Vega automobile approximately one hour after this crime pursuant to a radio dispatch indicating the robber's description as gathered from the witnesses at the scene. The passengers were Timothy Koch, Carolyn Kiser, Connie Kiser and Appellant who matched the description of the robber. Lewis further testified that upon investigation of the car, he found a Lincoln Bank money bag, a bag with "Monday" written on it and various articles of clothing in a cellophane type bag. The clothing included a blue plaid shirt, a pair of blue jeans and brown suede shoes. Lewis subsequently recovered a gun and a large amount of money from the motel room where Appellant had been immediately before being stopped in the Vega automobile. Timothy Koch stated that he became involved with Appellant because their girlfriends were sisters. He testified that prior to this crime, Appellant asked him to participate in some robberies which information Koch passed along to police. In fact, Koch was the individual who told police that Appellant drove a green Vega bearing a certain license plate number. Koch further testified about his involvement with Appellant in this crime which caused him to plead guilty to felony theft and to receive a two year suspended sentence. Koch testified specifically about parking near the restaurant and watching Appellant go in with a stocking over his head and return with a Lincoln Bank bag and the "doggy bag" filled with money. Koch also identified the gun Appellant used during this robbery. Appellant withdrew his alibi notice and presented no evidence or defense in this case.

I

Appellant first alleges that his trial counsel ineffectively represented him at trial. We note that Appellant personally raised this issue by having incorporated into his motion to correct errors a short, unsubstantiated and unverified statement. Appellant therein claimed:

"I feel that Mr. Bruce Cowen [trial counsel] did not represent me to his best ability. The reason for this; Mr. Cowen had major trials just before my trials, I feel this inabled (sic) him to have proper time to prepare and consult with me. I also feel that in the case of CCR–83–9

[instant case] Mr. Cowen could have cross-examed (sic) witnesess (sic) more about their credibility. Witness Tim Koch should have been cross-examed (sic) more about his character and previous statements made in his video statement.... Mr. Cowen should have cross-examed (sic) Mr. Peck in detail about the robber shoes."

We find no argument and no citation to supporting authority on this issue in Appellant's brief to this Court.

 It is, of course, basic that we presume that counsel was competent and we require convincing evidence to rebut that presumption. *Smith v. State*, (1984) Ind., 465 N.E.2d 1105, *reh. denied; Howell v. State*, (1983) Ind., 453 N.E.2d 241; *Lindley v. State*, (1981) Ind., 426 N.E.2d 398. Moreover, this Court will presume that the strategies or tactics which were not employed by trial counsel were not warranted by the circumstances or, if indicated, were rejected after due deliberation. *Helton v. State*, (1980) 273 Ind. 211, 402 N.E.2d 1263. As the United States Supreme Court has held, the proper standard for attorney performance is that of reasonably effective assistance. *Strickland v. Washington*, (1984) — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674. Accordingly, when a convicted defendant complains of the ineffectiveness of his counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Appellant has made no such showing in this case. We find no error.

## II

 Appellant next argues that the in-court identifications made of him were improper since "based upon suggestive police procedures and not based upon sufficient independent facts." Dellinger, Rauch, Peck and Stellhorn each testified that approximately one hour after the robbery they were driven by police to a street location to identify a suspect. Dellinger testified about the "show-up" during his direct examination as follows:

"A. We stopped, we asked to turn the bright lights on, they had the lights on, but he turned the bright lights on for us. We were parked behind where the two [police] cars were in relation to, we weren't right behind the cars, we were in between but we were set back behind the other two cars. They held the person, they had a person handcuffed and a police officer just had ahold of him by the arm right by the Vega. It was just on the driver's side of the Vega standing up and then I saw the person.

[objection made and overruled]

And then soon as we pulled up, before he even stopped and put the car in park, we all said that's him. We just all said it at the same time.

Q. And him being, who?

A. The person that robbed us.

Q. And the person you've just identified?

A. That's right.

Q. Did he have the same clothes on when he had robbed the restaurant?

A. No.

Q. Tell us what you observed and what happened with respect to his clothing?

A. Well, his clothes were different. Shoes were the same, but the other clothing was different. I wasn't at that time looking, noting at his particular clothes he had on. I just knew they were different.

Q. Your identification of him was based upon your looking at his face, build, and so forth?

A. Correct.

Q. Did the police eventually dress him in a different manner?

A. Yeah. They had him slip the pants on over what he had and the shirt over the one he had."

An in-court identification of an accused is impermissible when it is tainted by an unduly suggestive pre-trial confrontation unless it can be shown that a factual basis for the identification exists independent of the pre-trial confrontation. *Harris v. State*,

(1980) 273 Ind. 60, 403 N.E.2d 327; *Tewell v. State,* (1976) 264 Ind. 88, 339 N.E.2d 792. Moreover, we have held that the merit of having a witness observe a suspect while the offender's image is still fresh in that witness' mind can properly justify a show-up occurring shortly after the commission of an offense. *Williams v. State,* (1979) 271 Ind. 656, 395 N.E.2d 239. We note that the identification witnesses in this case testified specifically that they could have identified Appellant as the robber without the show-up and that the police procedure did not influence them. We now agree with the trial court who thoroughly considered this matter and find that there existed an independent basis for each of the in-court identifications made in this case. The identifications were proper and were properly admitted. There is no error on this issue.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PRENTICE, JJ., concur.