Julius BURCH, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 2–685A193.[1]

Court of Appeals of Indiana,
First District.

Dec. 30, 1985.

Rehearing Denied Feb. 4, 1986.

---

**1.** This case was diverted from the Second District to the First District by order of the Chief Judge.

Michael H. Duckett, Muncie, for appellant.

Linley E. Pearson, Atty. Gen., Jody Cusson-Cobb, Deputy Atty. Gen., Indianapolis, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

A Delaware Superior Court jury found the defendant, Julius Burch, guilty of attempted robbery while armed with a deadly weapon,[2] a class B felony, and battery with a deadly weapon,[3] a class C felony. He was subsequently sentenced to consecutive terms of ten years for the attempted robbery and five years for the battery. The trial court also fined him a total of $2,000. We affirm.

## FACTS

At approximately 7:45 p.m., on November 3, 1983, Ball State University co-ed Suzanne Scheidler was returning to her car, which she had parked on the second level of the parking garage adjacent to the BSU library. As she approached the door leading from the stairwell to the garage's second level she was "goosed" from behind by a man she later identified as Julius Burch. The man then followed Scheidler as she continued toward her car, repeatedly inquiring about her plans for the evening. When she reached her car, the man pushed her against the door and produced a knife

2. *See* Indiana Code sections 35–42–5–1, 35–41–5–1 (Burns 1985).

3. *See* Indiana Code section 35–42–2–1 (Burns 1985).

demanding that Scheidler get into her car. She refused. He then demanded Scheidler's backpack and pressed the knife against her rib cage. As she reached into the car for the backpack, the man pushed her into the vehicle. She continued to struggle with her assailant, however, and he fled from the garage. Additional facts will be developed as necessary.

## ISSUES

The defendant, Julius Burch, raises essentially four issues on appeal. Rephrased and reordered, those issues are:

1. Whether the trial court committed reversible error when it admitted evidence of other criminal acts.

2. Whether the trial court erred when it denied Burch's request for a polygraph examination, at public expense, to aid in sentencing.

3. Whether the trial court committed fundamental error when it permitted an in-court identification of Burch by Scheidler after she viewed an unduly suggestive pretrial photographic array.

4. Whether the trial court erred when it sentenced Burch.

## DISCUSSION AND DECISION

*Issue One*

Burch initially argues that the trial court erred when it admitted evidence of other, uncharged criminal activity. That evidence came in the form of testimony from another BSU co-ed, Kimbra McDowell. Over the defendant's objections, McDowell testified that on November 10, 1983, exactly one week after Scheidler was attacked, at approximately 6:30 p.m. in the evening, she was descending the stairs from the second level of the same parking garage. A man approached her on the stairs, grabbed her on the inside of the thigh and made a lewd remark. She was able to strike him with her umbrella and proceed past him to the bottom of the stairway. The man remained on the stairs laughing. Later, believing she recognized her assailant from high school, she paged through her year-

book until she found a picture of the man. That man was Julius Burch.

 As a general rule, evidence which tends to show that the defendant engaged in criminal activity other than that with which he is charged is irrelevant and highly prejudicial and, therefore, inadmissible on the issue of the defendant's guilt. *Williams v. State* (1985), Ind., 481 N.E.2d 1319, 1321; *Malone v. State* (1982), Ind., 441 N.E.2d 1339, 1345; *Willis v. State* (1978), 268 Ind. 269, 272, 374 N.E.2d 520, 522; *Biggerstaff v. State* (1977), 266 Ind. 148, 152, 361 N.E.2d 895, 897. Such evidence may, however, be admissible to establish the defendant's identity, knowledge, intent or motive, or to demonstrate that the crime charged is part of a common scheme or plan of criminal activity. *Williams*, at 1321; *Malone*, at 1346. When the state seeks to employ this exception to the general rule, it is required to demonstrate that the means used to commit the uncharged criminal activity sought to be introduced were nearly identical to those used to commit the charged crime. *Williams*, at 1321. Repeated commission of similar crimes is not sufficient. *Willis*, 268 Ind. at 272, 374 N.E.2d at 522; *Biggerstaff*, 266 Ind. at 152, 361 N.E.2d at 897. Rather the methods employed must be so similar, unusual and distinctive as to constitute a signature. *Id.*

 Burch correctly points out that there were in fact several dissimilarities between the two crimes. He notes that: (1) no weapon was used during the attack on McDowell; (2) the sole motive for the attack on McDowell appeared to be sexual in nature; (3) McDowell was not subjected to actual physical abuse; and, (4) the assailant who attacked McDowell did not pursue her. Hence, he argues, the two crimes were not so similar as to permit introduction of the uncharged criminal conduct.

The state, on the other hand, introduced several relevant similarities between the two crimes. It demonstrated that: (1) both attacks were initiated in virtually the same area of the same stairwell in the same parking garage; (2) each attack occurred

on a Thursday; (3) both attacks took place during the early evening hours; (4) both victims were BSU co-eds; and, (5) sexual overtones were present in both incidents.

This case clearly presents a very close question.[4] However, we believe that the two crimes were sufficiently similar to justify admission of the uncharged conduct in the trial of this case. In addition, we note that since Burch interposed an alibi defense, identity was *the* primary issue here. This evidence was, therefore, highly relevant. *See Malone,* at 1346. Consequently, the trial court committed no error in admitting Kimbra McDowell's testimony.

*Issue Two*

Burch next claims that the trial court erred when it denied his petition for a polygraph examination at public expense. The purpose for this examination, according to Burch's petition, was to develop evidence relevant to his attitude, background, character, and other criteria which the trial court is entitled to consider under Indiana Code section 35–38–1–7 (Burns 1985), in sentencing. Record at 178. This case does not require us to determine whether polygraph results are admissible for this purpose however.[5] Rather, resolution of Burch's argument requires us to consider only whether the trial court erred in denying his request for public funds to conduct the examination.

■ In Indiana, the decision whether to provide an indigent defendant with an expert to aid in the preparation of his defense is firmly committed to the trial court's discretion. *Thomas v. State* (1984), Ind., 459 N.E.2d 373, 376; *Owen v. State* (1979), 272 Ind. 122, 127, 396 N.E.2d 376, 380. Therefore, this court will reverse only where there is an abuse of that discretion. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214,

1220. Here, however, we perceive no such abuse.

■ Recently, the United States Supreme Court discussed a similar issue in *Ake v. Oklahoma* (1985), —— U.S. ——, 105 S.Ct. 1087, 84 L.Ed.2d 53. In *Ake,* the defendant argued that he should have been provided the services of a court-appointed psychiatrist to assist in preparing his insanity defense. The court initially recognized that:

> "mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an affective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, see *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), it has often reaffirmed that fundamental fairness entitles indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,' *id.,* at 612, 94 S.Ct. at 2444. To implement this principle, we have focused on identifying the 'basic tools of an adequate defense or appeal,' *Britt v. North Carolina,* 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them"

*Id.* at ——, 105 S.Ct. at 1094, 84 L.Ed.2d at 62. The court went on to explain just how essential a psychiatric expert had become to a defendant attempting to interpose an insanity defense. They concluded, therefore, that when an indigent defendant has made a preliminary showing that his sanity

---

4. See Justice Prentice's concurring opinion in *Washington v. State* (1981), Ind., 422 N.E.2d 1218, 1221–22.

5. In *Allen v. State* (1980), Ind.App., 406 N.E.2d 976, 981, we held that the results of a polygraph examination are not admissible in a sentencing hearing for the purpose of relitigating the issue of the defendant's guilt. This court went on to state, however, that "we need not and do not decide today whether or not there may be circumstances in which polygraph results would be admissible at a sentencing hearing." *Id.* at 981.

at the time of the crime charged is likely to be a significant factor at trial, due process requires that the state provide him with access to a psychiatrist's assistance in the preparation of his defense.[6] *Id.* —— U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 66.

The case at bar presents a fundamentally different situation however. Unlike the admittedly essential need for psychiatric expertise in preparing an insanity defense, there is no evidence that a polygraph examination would play a pivotal role in the ordinary sentencing hearing. In fact, any value such an examination might have is highly questionable. *See Kimmel v. State* (1981), 275 Ind. 575, 584, 418 N.E.2d 1152, 1157, *cert. denied* 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239; *Vacendak v. State* (1976), 264 Ind. 101, 110, 340 N.E.2d 352, 357, *cert. denied* 429 U.S. 851, 97 S.Ct. 141, 50 L.Ed.2d 125. Therefore, we see no reason to extend *Ake* to this type of case. Due process did not require the trial court to grant Burch's petition for a polygraph examination, at public expense, to aid in sentencing.

■ Furthermore, we note that Burch failed to demonstrate that he could not provide the trial court with the same information he sought from the polygraph examination by more traditional means. He was certainly entitled to present character witnesses who could testify as to his lack of prior criminal activity, the likelihood that he would engage in future criminal activity, or any of the other criteria set out in the sentencing statute. He did in fact present witnesses during the sentencing hearing who testified extensively on these subjects. Consequently, Burch has failed to establish that the trial court abused its discretion when it denied his petition.

*Issue Three*

■ Next, Burch contends that the trial court erred when it permitted Scheidler to make an in-court identification of him after she had viewed an unduly suggestive photographic array. As Burch tacitly admits in his appellate brief, however, he failed to object to the in-court identification when it was made. Therefore, he did not properly preserve this for appellate consideration. *Smith v. State* (1985), Ind., 475 N.E.2d 1139, 1144; *Crosson v. State* (1980), 274 Ind. 247, 249, 410 N.E.2d 1194, 1195. We would overlook this procedural default if any error occassioned by the trial court's action could be characterized as fundamental. *Crosson*, 410 N.E.2d at 1195. However, in the context of this particular case, any error in this regard would not be fundamental error. *See Connell v. State* (1984), Ind., 470 N.E.2d 701, 704 (failure to object to in-court identification of defendant after unduly suggestive photographic array resulted in waiver of issue on appeal); *Wilson v. State* (1984), Ind., 465 N.E.2d 717, 720 (any error in admitting in-court identification after an impermissibly suggestive initial confrontation waived by defendant's failure to object at trial). Even if we were to reach the merits of this issue, however, we would be constrained to uphold the trial court's decision.

■ Where the pretrial identification procedures are unduly suggestive, an in-court identification is still permissible if the witness has a factual basis, independent of the improper pretrial procedure, to support it. *Little v. State* (1985), Ind., 475 N.E.2d 677, 682; *Grossenbacher v. State* (1984), Ind., 468 N.E.2d 1053, 1055; *Henson v. State* (1984), Ind., 467 N.E.2d 750, 753. A number of factors can be considered in determining the existence of an independent basis including the: (1) witness' opportunity to observe the defendant; (2) lighting conditions at the time of the incident; (3) witness' proximity to the defendant;

---

**6.** The court also held that, in this particular set of circumstances, Ake was entitled to the assistance of a competent psychiatrist during the capital sentencing phase of the trial also. *Id.* —— U.S. at ——, 105 S.Ct. at 1097, 84 L.Ed.2d at 67. Our supreme court recently has held that the Indiana statutory scheme requiring appointment of psychiatrists to examine a defendant pleading insanity and to testify at his trial satisfies *Ake* provided the psychiatrists are made available to defense counsel for interview prior to trial. *Palmer v. State* (1985), Ind., 486 N.E.2d 477.

and, (4) witness' capacity to observe the defendant. *Hare v. State* (1984), Ind., 467 N.E.2d 7, 14. Here, the trial court could have properly determined that Scheidler had an independent basis to support her in-court identification of Burch.

Scheidler testified that the attack lasted at least five minutes and that she was virtually face to face with her assailant during most of this time. She also stated that she could see Burch's face clearly during the attack. Finally, she testified that both the stairwell and the parking garage were well lighted at the time of the attack. It is clear, from the foregoing discussion, that Burch has failed to demonstrate any reversible error.

*Issue Four*

■ Burch finally argues that the trial court erred in at least two respects when it sentenced him. Initially, Burch asserts that the court erred in imposing the presumptive sentences for both convictions. He reasons that the mitigating circumstances clearly outweighed the aggravating circumstances and, therefore, the presumptive sentence was manifestly unreasonable. We cannot agree. When confronted with this issue in *Wilson v. State* (1984), Ind., 465 N.E.2d 717, our supreme court stated:

> "Whether the basic sentence will be increased or decreased due to aggravating or mitigating circumstances is within the trial court's discretion. When the trial court imposes the basic sentence, this Court will presume that it considered the proper factors in determining that sentence. [Citations omitted.]"

*Id.* at 721. *See also Meadows v. State* (1981), Ind., 428 N.E.2d 1232, 1235; *Gardner v. State* (1979), 270 Ind. 627, 633, 388 N.E.2d 513, 517. We note, in addition, that the finding of mitigating circumstances is purely discretionary. *Sylvester v. State* (1985), Ind., 484 N.E.2d 1, 3; *Cornelius v. State* (1981), Ind., 425 N.E.2d 616, 619. Clearly then the trial court did not err in imposing the presumptive sentences.

■ Burch next argues that the trial court erred when it ordered the two sentences to be served consecutively. When consecutive sentences are imposed the trial court must state on the record specific and individualized reasons for doing so. *Lindsey v. State* (1985) 485 N.E.2d 102, 108; *Richardson v. State* (1985), Ind., 481 N.E.2d 1310, 1314; *Pyle v. State* (1985), Ind., 476 N.E.2d 124, 127. The only reason offered by the trial court for the imposition of consecutive sentences was that a deadly weapon was used against another individual. Record at 462. Since use of a deadly weapon was part of the crimes charged here, it alone will not support imposition of consecutive sentences. *Green v. State* (1981), Ind., 424 N.E.2d 1014, 1015. In such circumstances, the appropriate remedy is to remand with instructions for the trial court to either enter specific and individualized findings which will support imposition of consecutive sentences or, in the alternative, resentence Burch to concurrent terms. *Lindsey*, at 108; *Green*, at 1015.

This cause remanded with instructions to correct the sentence consistent with this opinion. In all other respects, the trial court is affirmed.

NEAL and ROBERTSON, JJ., concur.