The judgment is reversed, and the cause remanded.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals, and approved by the court.

**BOBINO v. STATE.**

No. 14731.

Court of Criminal Appeals of Texas.

Jan. 27, 1932.

Rehearing Denied June 8, 1932.

Fletcher S. Jones, of Beaumont, for appellant.

Lloyd W. Davidson, State's Atty., of Austin, for the State.

LATTIMORE, J.

Conviction for burglary; punishment, two years in the penitentiary.

But three witnesses testified. The owner said she had a vacant apartment house which she visited on Thursday, February 12, 1931, cleaned up, locked all the doors, and left. She was notified Saturday following that her house had been burglarized. She said she found the pipes had been disconnected and two bath tubs taken. A back door was broken open. Two doors were also taken from the house. She said she got the tubs and one door back from Mr. Ott. The state introduced Elijah Silas, who testified that about February 13, 1931, he, appellant, Ira Hubbard, and Mack Bridges were together in the city of Beaumont, and appellant suggest-

ed that they go and get the bath tubs, and they all decided to go. Appellant had a wagon. He and Bridges left on the wagon. Silas and Hubbard walked. The two latter got to the house first, opened the door, went in, and disconnected the tubs. About this time appellant and Bridges came up and they loaded the tubs on the wagon and took them to a certain shed, and later sold them to Mr. Ott for $20. Ott testified that Mack Bridges had worked for him, and that he told him he knew of some bath tubs that could be bought cheap. One day Mack Bridges told him the man who had the bath tubs was there. The man who was there turned out to be this appellant. He described the tubs and told how he came to have them and to want to sell them. Ott said it was too late that afternoon to get the tubs, but the next day two negroes came to Ott's place and they talked the matter over, and witness offered to give them $10 each for the tubs. They refused and left, but one of them came back with appellant, and they then agreed to take $20 for the two tubs. These two negroes were Silas and appellant. Appellant did the talking during the making of this trade. He told witness that his mother had owned the tubs, but had taken them out, and that she had died and he had no use for the tubs. The tubs were delivered by appellant to witness.

Under our practice, complaints of objectionable things transpiring during a trial should be presented here by bills of exception. It is confusing to us to have complaints in briefs based on paragraphs or sections or subdivisions of the motion for new trial. We are then compelled to analyze and examine and ascertain from other parts of the record whether the matter in such motion for new trial has been properly preserved by bill of exception.

■ Bill of exception No. 1 complains of the acceptance of oral testimony given by the owner of the burglarized house, that the house was hers. There was no error in this. The question of the title to the soil is not involved. In burglary cases, ownership is sufficiently established by occupance, possession, and control.

■ Bill of exception No. 2 sets out objection to the owner of the stolen property testifying that she found her tubs in the possession of witness Ott. There is nothing in the complaint.

■ Bill of exception No. 3 brings forward the complaint that the owner of the property was allowed to testify that she did not give Silas, Bridges, Bobino, and Hubbard, or any of them, her consent to enter her house. These named were the alleged breakers and takers, and the question and answer were proper.

■ Bill of exception No. 4 sets out alleged error in allowing the state to ask Silas, one of the parties indicted, if he was willing to tell all about the facts and circumstances connected with the case. We would not think it error if he had been allowed to answer, but the bill fails to show that he made any answer to the question, and hence is defective.

■ Bill of exception No. 5 sets out that when the state asked Silas, a state witness, the question as to what he did when he went to the alleged burglarized house, objection was made that this would not be binding on the appellant, because no conspiracy had been shown between appellant and the other parties named. The objection was properly overruled, and the witness answered, "Unconnected the bath tubs." Substantially the same principle is involved in bills of exception, Nos. 6 and 7 complaining of the admission against appellant of testimony of the witness Silas in regard to what he and Hubbard did at the alleged burglarized house before appellant and Bridges got there. Appellant was not on trial for the offense of conspiracy, but for the offense of burglary; which offense might be committed by one or a number of men, and if by a number, then the acts and declarations of each or all of them pending and pursuant to the commission of the crime would be admissible on the trial of all or any one of such men. According to the testimony of Silas, he and the three other named parties agreed to go and get the bath tubs. He and one of them went on in advance and reached the house before the others got there. Shortly after, the others came with the wagon into which all of them loaded the bath tubs, which were carried by all of them to a place of concealment, and by all of them sold to Ott. The fact that two of said parties, in the execution of the common design, or what might be by the jury believed to be the common design of all of them, reached the house and entered it before the others got there would in no way prevent their act in such entry from being in law the common act of all of them. Parties acting together with common design in the commission of a crime need not be altogether or in physical contact at the time the crime is committed. One or another may be doing some act different in point of time and place from the things done by the others, but, if all act together pursuant to their common design, the acts of each are provable against all, or any of the others.

Appellant has an able brief and advances a number of propositions, and quotes from various authorities as supporting the proposition that the conspiracy must be proved to have been entered into by all the parties before the acts of any one can be introduced. Quotation is made from Smith v. State, 46 Tex. Cr. R. 267, 81 S. W. 936, 108 Am. St.

Rep. 991, but we note that when said case came up before this court for hearing after another conviction, in an opinion reported in 48 Tex. Cr. R. 233, 89 S. W. 817, this court quoted from the opinion in Cox v. State, 8 Tex. App. 254, 34 Am. Rep. 746, a better rule, and one which governs under facts such as appear in the record before us. In said last-named opinion, as set out in the opinion in Smith v. State, 48 Tex. Cr. R. 233, 89 S. W. 817, it is said, in substance, that there could be no better predicate or evidence of a conspiracy than presence and guilty participation in the crime. It is further said that it is too plain to admit of argument that, when two or more are found acting together with an unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators, endows them as a body with the attribute of individuality, merges the conspiracy to do the act into the act itself, and that the previous acts and declarations of each or any such principal offenders in pursuance of the agreed plan, and tending to throw light upon it or the motive or intent with which it was committed, is and should be received as legal and admissible evidence against each and all, whether indicted, prosecuted, and tried jointly or separately. This disposes of the contentions in each of the three bills of exception referred to.

▓▓ Bills of exception Nos. 8, 10, and 11 set out objections to testimony of witness Ott as to conversations had with Mack Bridges antecedent and leading up to the purchase of the tubs in question. It would appear plain that what was said by Mack Bridges, one of the offenders and parties to the crime of burglary involved in this case, seeking a place where the stolen property might be disposed of, would be controlled and governed by the same rule announced above in our discussion of bills of exception Nos. 5, 6, and 7. The fact that the other parties to the crime were not present when Bridges was trying to interest Ott in the purchase of the tubs would not militate against its admissibility. The stolen property had not been disposed of. The parties were still acting together.

Bill of exception No. 12 complains of some statement by the prosecuting attorney in connection with the offering of certain testimony; the substance of the statement being that he would like to show circumstantially by the proffered testimony that one of the parties to the crime had a certain conversation with witness Ott.

We have been interested in the able brief of counsel for appellant, and have carefully considered his various propositions, but are of opinion no error appears, and the judgment will be affirmed.

## On Motion for Rehearing.

HAWKINS, J.

The motion for rehearing is predicated on a proposition not discussed in our original opinion. It is based on the sole point that under the court's charge the evidence is insufficient to support the verdict.

▓▓ The indictment contained two counts. The first expressly charged that the burglary was committed in the nighttime; the second alleged that by force, threats, and fraud appellant burglariously and fraudulently broke and entered the house in question. By an unbroken line of authorities it is held that the second count was sufficient to charge either a daytime or a nighttime burglary. Carr v. State, 19 Tex. Cr. R. 635; and other authorities cited in section 2327, Branch's Ann. Tex. P. C. The court submitted a "daytime" burglary only, properly defining "daytime" as being any time of the 24 hours from thirty minutes before sunrise until thirty minutes after sunset (article 1396, P. C.), and required the jury to believe from the evidence beyond a reasonable doubt that the house was entered by force in the daytime. It is claimed in the motion for rehearing that no evidence is in the record showing said burglary occurred in the daytime. Appellant refers to the testimony given by the accomplice witness as follows: "We did *not* walk in there in *broad open daylight*. It was just *about dusk dark*, the sun had gone down. The sun had been down, I guess, *about forty minutes*." If there were no evidence in the record other than that quoted which throws light upon the time the burglary was committed, the point now urged by appellant would be troublesome. According to the owner's testimony, two doors were removed from the inside of the house, as were also the two bathtubs. The owner also testified that she examined the house and found that it was entered from the back; that the back door was broken open. Silas testified that the first he knew about the house was when he met appellant and Bridges; that they had *two doors* already on a wagon, and told witness about the bathtubs, and that they (witness, appellant, Bridges, and Hubbard) decided to get the tubs; that witness and Hubbard walked and appellant and Bridges went in the wagon; that witness and Hubbard got to the house first; and that witness opened the front door and walked in. Silas said he knew nothing about when the doors were taken and had nothing to do with getting them. The time spoken of by Silas, as being forty minutes after sundown, referred to the time when he went to the house to get the bathtubs. The evidence shows that the house had been burglariously entered before that time and the doors taken. This, we think, supports the findings of the jury of a daytime burglary, as submitted by the court.

The motion for rehearing is overruled.