## STATE OF HAWAII *v.*
## RICHARD TOSHISHIGE YOSHINO.

### No. 4198.

August 10, 1961.

Tsukiyama, C. J., Cassidy, Wirtz, Lewis, JJ.,
and Circuit Judge Crockett, Assigned by
Reason of Vacancy.

OPINION OF THE COURT BY CIRCUIT JUDGE CROCKETT.

Defendant-plaintiff in error, Richard Toshishige Yoshino, was convicted in the First Circuit Court by a jury under an indictment for robbery in the first degree, which in substance charged that the defendant on the 6th day of September, 1959, being armed with a dangerous weapon, to-wit, a gun, did feloniously rob, steal, take and carry away approximately $300.00 from the custody and in the presence of Kalani Fernandez by the use of force and putting him in fear of life and bodily injury.

The evidence for the prosecution showed that around 2:00 a.m., the morning of September 6, 1959, Kalani Fernandez, operating a '57 Oldsmobile in which were riding two companions, Mervyn Hezekia and Kenneth Harada, while stopped at the corner of Date Street and Kapiolani Boulevard in Honolulu, was hailed by someone in a car, later identified as a '58 Mercury, which drew up along the right side of his car. Fernandez was told that his cousin needed help and was asked to follow this car. Both cars proceeded to Iolani School parking lot where, after coming to a stop, Fernandez got out of the Oldsmobile and walked towards the Mercury. As he approached, three persons got out of the Mercury and at the point of a gun took from him the sum of $300.00. After this, Hezekia and Harada were ordered out of the Olds-

mobile and told to get into the Mercury. Two of those who robbed Fernandez, identified as James Pokini and Henry Villita, ordered him into the back seat of the Oldsmobile, took over the car with Villita as driver and proceeded to the home of Harry Sonoda at Papakolea. The other of the three persons, identified as the defendant, Yoshino, re-entered the Mercury and with a fourth man, who had remained in the car during the robbery, at the wheel, drove off taking with them the two boys, Hezekia and Harada. With the Oldsmobile following, the Mercury proceeded to Papakolea and parked near the Sonoda home where a second robbery was allegedly perpetrated, the direct actors being Pokini and Villita. Later, Hezekia and Harada were given $10.00, dropped off at a service station and told to catch a taxi. The Oldsmobile, after leaving the Sonoda home, proceeded along Punchbowl to Lusitana Street where it was stopped by Police Officer Lee, and the occupants placed under arrest.

The defendant Yoshino set up as his defense an alibi. He testified that he had been at his home during the evening and at about 12:45 a.m. on the morning of September 6th left home in his car to pick up his wife who was a ballroom hostess; that they both went to a drive-inn to eat and then returned home; that on that night he had not seen any of the persons who identified him as being present at the scene of the robbery charged.

The State's witnesses were allowed to testify as to what defendant calls a second crime committed by Pokini and Villita after the robbery was committed at the Iolani School parking lot. This testimony detailed events which occurred after the two cars left the parking lot, while proceeding to and at the home of Harry Sonoda at Papakolea. It was to the effect that a further robbery was perpetrated there by the persons riding in the Olds-

mobile; also that after the two cars separated on leaving Papakolea, the Oldsmobile was stopped by a police officer at Lusitana, who arrested the occupants, searched them and the car and found two guns, a clip and shells.

Defendant's first and major assignment of error is to the admission of the testimony of what occurred after the robbery at the parking lot on the ground that it tended to show the commission of an offense with which the defendant was not charged. The court allowed the testimony under the authority of the case of *Territory* v. *Abellana,* 38 Haw. 532, in which this court said:

"To the established rule that evidence of other crimes wholly independent of that for which a defendant is on trial is inadmissible, are two equally well-defined exceptions: (1) That evidence of other crimes is competent to prove the specific crime charged if it tends to establish a common scheme, plan or system embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; and (2) when such evidence tends to aid in identifying the accused where his identity has not been definitely connected with the offense on trial."

See also *State* v. *Carvelo,* 45 Haw. 16, 361 P. 2d 45; *State* v. *Yoshida,* 45 Haw. 50, 361 P. 2d 1032.

Objection to this line of testimony was made at the outset of the trial while Fernandez, the first witness, was testifying. At this stage of the proceedings, the court did not have the full and complete picture before it. The testimony was allowed upon the express condition stated by the court, that if the proof failed to establish a common scheme, plan or system, a motion to strike would be entertained, with instruction to the jury to disregard the same. The prosecution contended that such evidence was also admissible to establish the identity of the per-

sons involved. The defendant was allowed a running objection to this testimony as well as to that of the subsequent witnesses but the record fails to show that he moved to strike this testimony at any time thereafter.

This assignment of error raises two questions: First, did the evidence as produced by the prosecution tend to show a common scheme or plan; and second, did such evidence tend to establish the identity of the accused?

Counsel for defendant contends that the rule of the *Abellana* case as to the exception showing a common plan or scheme is not applicable here because there is no "logical connection" between the two offenses.

The rule under which evidence of other offenses is excluded is that "* * * on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime *wholly independent* (emphasis added) of, and unconnected with, that for which he is on trial, * * * is irrelevant and inadmissible * * *." A short version of the rule is "* * * it is not competent to prove one crime by proving another, * * *." 22 C.J.S., *Criminal Law*, § 682. This is a general rule of exclusion and it does not apply where the two crimes are so inseparable as to constitute but one transaction or crime. 22 C.J.S., *Criminal Law*, § 683.

It is difficult to conceive of a series of events which more clearly depict one transaction with several crimes logically related or connected than are present in this case.

Undisputed and uncontradicted facts show that on the night in question, one of the persons in an auto accosted Fernandez and requested him to follow them to the Iolani School parking lot. On arriving there, three persons got out of the car and at the point of a gun, robbed him. After the robbery, they ordered him into the back seat of his car, Pokini and Villita took over

and drove to the home of Sonoda at Papakolea; there Harry Sonoda was assaulted and money obtained under the threat of a gun.

After the robbery of Fernandez at the school parking lot, Pokini and Villita forced Hezekia and Harada to get out of the Oldsmobile and into the Mercury. The third man who had assisted in the robbery, identified by both Hezekia and Harada as Yoshino, the defendant, also re-entered the Mercury and threatened to kill Hezekia if he did not tell them "where the money." Hezekia finally told them "Yeh, I know where the money stay. * * * Stay up Papakolea." At that point the driver of the Mercury yelled to those in the Oldsmobile to follow the Mercury to Papakolea.

At Papakolea defendant did not get out of the car or actively participate in the assault and robbery that occurred there, but there was testimony to the effect that he exchanged guns with Pokini and also received a share of the money.

This evidence unquestionably shows one continuous plan or scheme, that the several offenses were not "wholly independent" but formed one inseparable and continuous transaction. It tends to show not just one but four or more distinct but related offenses; *i.e.,* malicious conversion, kidnapping, assault with a weapon, robbery. Such evidence was properly admitted by the court under the rule of the *Abellana* case. See also *State* v. *Yoshida,* and *State* v. *Carvelo, supra.*

Although the trial court did not make a ruling on the point, the prosecution further contended that the evidence of what occurred subsequent to the robbery at the school parking lot was also admissible under the identification exception to the rule. The alibi set up by the defendant as his defense clearly raised the issue of identification. As it will appear later herein, this issue

was recognized by the trial court in its instructions to the jury.

In his brief, counsel for the defendant says "there was no question as to the identification in the *Abellana* case, whereas, in the present case, Yoshino has not been identified as being present at either of the two offenses involved." Therefore, he argues that the exception mentioned in the *Abellana* case to the effect that such evidence is admissible on the issue of identity does not apply here. In other words, it is contended that evidence tending to identify the defendant is not admissible until he is identified. The absurdity of such contention is obvious.

First of all the facts do not sustain defendant's contention that there was "no question of identity" in the *Abellana* case. In that case defendant argued "* * * that the second exception is likewise inapplicable for the reason that the *identity* of the *accused* was *definitely connected* under the issues raised upon trial and was *established* by *independent* evidence * * *." (Emphasis added.) The court ruled however:

> "* * * The record contains no stipulation or admission of identity of the accused as the perpetrator of the crimes charged in the indictments. The defendant was on trial under the issues framed by his pleas of not guilty under two separate indictments consolidated for trial for the alleged commission of two 'acts or transactions connected together,' robbery in the first degree of Jones and rape of the victim. The burden of proof thus evolved was upon the territory and continued throughout the trial. The evidence bears positive identity of her assailant by the victim on the one hand, but indefiniteness on the other hand as to whether the witness Jones established the identity of the defendant other than referring to him as the civilian, and his further statement that 'I never saw the civilian in the face at all.'

"The burden of proof upon the issue of identity being upon the Territory throughout, the testimony of the witness Rodrigues was competent and relevant upon that issue also."

The issues as to identity in the *Abellana* case and in the present case are identical. The evidence was likewise admissible under the second exception.

Included in the testimony admitted were several statements made out of the presence of the defendant, to which the defendant objected as hearsay as set forth in the second assignment of error. These include statements testified to by Fernandez as being made to him by one of the two men riding with him in the Oldsmobile after arrival at the Sonoda home, "when they asked if I know a guy named Cole," also, "they told me they going to shoot me"; statement made to Hezekia at Iolani School parking lot when Pokini asked him "where the money" as testified by him; statements made to Harry Sonoda by Pokini and Villita when they arrived at his home at Papakolea as testified to by him as follows:

"I just was going to ask him what he wanted, somebody hit me, eh. 'Eh, get in the car', and I look at the gun. The guy had gun, the guy in the car told me, 'Where the money was?' I told him, 'No, I don't know' and he keep on telling me where the money and the other guy next to him pull out another gun, 'Come on tell me where the money.' I said, 'Okey, wait, I go get the money.' He got off the car, and the guy was driving, he got out, too, and he told me he going in the house with me."

This testimony was admitted on the theory that the evidence showed a common plan or scheme between Pokini, Villita and the defendant Yoshino.

There is no question but that the evidence as pointed out above did show concert of design and planned deter-

mination to search for and get certain moneys, and that, as the prosecution contended, a conspiracy existed between Pokini, Villita and the defendant to get certain moneys and to do whatever was necessary to accomplish their purpose. Although defendant separated from Pokini and Villita by getting into the Mercury at the parking lot, with Hezekia and Harada, he did not abandon this purpose. There was testimony that he himself continued to question Hezekia about "where the money stay"; that he threatened Hezekia who testified "If we no tell, he going kill us." Finally, Hezekia told Yoshino "Yeh, I know where the money stay * * * Stay up Papakolea." It was then that the driver of the Mercury yelled "to the guys in the '57 Oldsmobile for follow the '58 Mercury up Papakolea."

A conspiracy exists where two or more persons combine and act together to accomplish a criminal or unlawful purpose. The essence of a conspiracy is the combination or agreement or unity of design between the members of the conspiracy. This agreement need not be a formal or expressed agreement. Its existence "* * * was a fair subject of inference for the jury, from all the facts submitted in evidence. * * *" *King* v. *Anderson,* 1 Haw. 41; *State* v. *Yoshida, supra.* When two or more persons are found acting together with an unlawful intent in the commission of an offense, the common design and acting together make them *ipso facto* conspirators. *Bobino* v. *State,* 121 Tex. Crim. Rep. 39, 50 S.W. 2d 334.

Where it appears that one or more persons have conspired to commit an offense, evidence of acts and declarations done or made in furtherance of the common purpose during the existence of the conspiracy, though subsequent to the offense charged, is admissible against all of the conspirators. *Territory* v. *Goto,* 27 Haw. 65; *Territory* v. *Kitabayashi,* 41 Haw. 428. Before the acts or declarations

of the one conspirator against the other are admissible a foundation must be laid by proving the existence of the conspiracy and the accused's connection therewith, but the conspiracy need not be established by direct evidence. Proof of circumstances from which its existence may fairly be inferred is sufficient to let in evidence of the acts and declarations of one conspirator against another. *Territory* v. *Goto, supra.*

Neither is it required that the conspiracy be established before receiving evidence of the acts and declarations of the members. With reference to the order of proof in conspiracy cases, quoting from *People* v. *Saunders*, 25 Mich. 119, in the *Goto* case, *supra,* this court said:

"* * * There is no class of cases in which it is more important that the circuit judge should have a large discretion as to the order in which evidence should be received; and this discretion cannot be reviewed on error except in clear cases of abuse, * * *."

The evidence adduced showed that Pokini, Villita and the defendant were acting together with an unlawful intent in a common plan not merely to rob Fernandez but to get the other money which they finally found at Sonoda's home. Under the rule applicable to the conspiracy thus shown, the admission of such evidence was not error.

Assignment of Error No. 3 is to the admission in evidence of two guns, clip and shells found by Police Officer Lee when he stopped the Oldsmobile on Lusitana Street, arrested the occupants, searched them and the car.

On leaving Papakolea, the Mercury and Oldsmobile became separated, the Mercury with defendant and other occupants going to the service station where Hezekia and Harada were finally dropped, and the Oldsmobile proceeding down Punchbowl to where it was stopped by Officer Lee and the occupants placed under arrest.

The objection is that there is no evidence to prove that

such articles belonged to the defendant or were used by him in the robbery, and that no proper foundation was laid for the reception of said items in evidence.

We find no merit to this assignment of error. The evidence showed that guns were used by the three who perpetrated the robbery of Fernandez; that defendant had a gun while riding in the Mercury with Hezekia and Harada subsequently; that he exchanged guns with Pokini at Papakolea while at Sonoda's home. This was relevant evidence tending to prove the commission of the offense charged, to-wit, armed robbery. The articles were taken from co-conspirators and under the rule of the *Goto* case, *supra,* were evidence against all.

Assignment No. 4 is to the modification and the giving as modified of defendant's requested instruction No. 21. As requested, the instruction read as follows:

"If you find from all the evidence that no common scheme, plan or system existed among the four individuals riding in the Mercury automobile to rob any person or persons of any or all moneys arising out of a prior burglary then you are instructed to disregard all of the testimony and evidence introduced subsequent to the event which allegedly took place at the Iolani School parking lot."

It was modified by adding,

"except insofar as it may bear on the identity of the Defendant or the dangerous weapon which may have been used in the parking lot episode."

The rule of the *Abellana* case is that evidence of other crimes is admissible and may be considered by the jury for either of two purposes (1) to prove a common scheme or plan, (2) to prove or establish identity. Obviously, it would not have been correct for the court to have instructed the jury to consider this evidence for the one purpose only, *i.e.,* to prove the common plan or scheme.

The modification, which instructed them to consider it also on the issue of identification of the accused or of the weapon used, was entirely proper and in accord with the rule, under the facts of this case.

In Assignment of Error No. 5, defendant contends that the court erred in permitting Pokini and Villita to be brought into the courtroom attired in prison garb to be identified by Fernandez, claiming that this procedure was irrelevant. Defendant fails to point out how it was irrelevant or wherein it was prejudicial to the defendant. At the most the record shows that when Pokini appeared in the courtroom, counsel's objection was merely "I see no earthly reason why Pokini should be brought in here," and that the same objection was made as to Villita's appearance. If the objection related to the relevancy of the procedure, there was sufficient evidence of the presence of both Pokini and Villita in the various activities involving the defendant to warrant their identification by the witness. 22 C.J.S., *Criminal Law*, § 616. As to the two persons identified being attired in prison garb, counsel merely requested that "the record so show." No other objection, motion, or request for instructions to the jury to disregard such appearance was made, nor was there any showing of prejudice.

In *State* v. *Brooks,* 44 Haw. 82, 352 P. 2d 611, defendant's counsel moved for a mistrial on the ground that defendant was brought into the courtroom in manacles, which motion was denied. The record did not show this nor did it indicate that the jurors had observed the incident. Upon assignment of error this court ruled, "* * * In the absence of a clear showing that defendant was prejudiced or that discretion was abused by the trial court, denial of the motion for mistrial cannot be charged as reversible error. * * * Upon the record in the case at bar, this court cannot indulge a presumption that the

jury was or might have been prejudiced. * * *"

It was held by this court in *Territory* v. *Scharsch,* 25 Haw. 429, that the violation of a constitutional right of an accused is presumed to be prejudicial. This presumption of prejudice does not extend to evidentiary matters. In *Territory* v. *Chang Tai Kun,* 26 Haw. 133, it was ruled that the erroneous reception of evidence the only tendency of which was to prove a fact so well established by other evidence that it could not have affected the verdict "was therefore not prejudicial to the rights of the defendant." See also *Territory* v. *Goto, supra.*

The appearance of Pokini and Villita in prison garb could at most only have been construed as indicating they had been convicted of the alleged robbery. That the robbery had in fact been committed was so well established by other evidence that their appearance could not have affected the verdict. It had no bearing on the issue of identity, *i.e.,* whether or not defendant was the third person who aided Pokini and Villita. Moreover, the court instructed the jury "Before you can convict the defendant in this case, it must appear, from the evidence, beyond a reasonable doubt, that the defendant, Richard Toshishige Yoshino, and not somebody else, committed or participated in the offense charged in the indictment * * * ."

While there is some difference between the facts of this and the *Brooks* case, nevertheless the rule that there must be a "clear showing of prejudice" is applicable. No prejudice is shown or appears from the record. The assignment is without merit.

Assignment of Error No. 8, in substance, is that the evidence was insufficient to support the verdict of the jury, the final assignment being error of the court in pronouncing sentence on the defendant when his guilt was not proven beyond a reasonable doubt. Both of these

assignments can be considered together under the question of whether the evidence was sufficient to sustain the verdict of the jury.

It hardly needs repeating that this court will not reverse the verdict of a jury if there is any substantial evidence more than a mere scintilla tending to support the findings necessary to the verdict rendered. *State* v. *Foster,* 44 Haw. 403, 354 P. 2d 960; *State* v. *Sorenson,* 44 Haw. 601, 359 P. 2d 289.

The first question for the jury was whether a robbery had been committed at the time, place and in the manner alleged in the indictment. The evidence on this point was direct and more than substantial and sufficient. There was not one word of contradiction to the story told by Fernandez and what was observed by Hezekia and Harada at the parking lot. The finding of the jury on this question must be sustained.

The second question relates to the identification of the defendant as one of the three persons who committed the robbery. He himself set up an alibi, to-wit, that at or about the time of the alleged robbery he had gone with his children to pick up his wife and bring her home, stopping at a drive-inn for an after-midnight snack. Opposed to the testimony of defendant was his partial identification as the partner of Pokini and Villita by Fernandez; the unqualified identification by Hezekia who had seen defendant at least three times before this night and had even visited and seen him at his home; the identification by Harada who had never seen defendant before this night but was positive that he was the man with them in the Mercury car and who gave them $10.00 for taxi fare home when they dropped him and Hezekia off at a downtown service station.

The identification of Yoshino by Fernandez and Hezekia was perhaps weakened by their admission that

they had testified at the preliminary hearing in the District Court that they were not able to identify Yoshino. Fernandez explained his testimony in the District Court by saying he was in fear because he had been "shot at" before he testified. Hezekia admitted he lied in the District Court, but explained his falsehood by saying "But wait—when somebody threatens you and your family they going to kill you, no tell me you no going to lie." It was wholly within the province of the jury to weigh the testimony and to determine the credibility of these three eyewitnesses as against that of the defendant. The identification of the defendant as testified to by such witnesses, if believed by the jury, was more than sufficient and substantial evidence to sustain their verdict.

As we find no error in any of the assignments herein, the judgment is affirmed.

*Daniel G. Ridley* (*Ernest Y. Yamane* with him on the briefs), attorneys for defendant, plaintiff in error.

*John H. Peters*, Prosecuting Attorney, City and County of Honolulu, and *Herbert H. Tanigawa*, Deputy Prosecuting Attorney, for the State, defendant in error.