Vaughn A. **HIGHLEY**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 27A04–8809–CR–298.

Court of Appeals of Indiana,
Fourth District.

March 29, 1989.

**1242**

David M. Payne, Marion, for appellant.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Vaughn A. Highley appeals his convictions of two counts of criminal confinement, class B felonies, after a jury trial. His convictions arise from a domestic dispute during which he allegedly barricaded himself, two children, and a third party in a house and refused to surrender himself to the police for seven and one-half hours. Highley asserts the trial court erred in allowing his ex-wife, Rhonda Tucker Hammang, to testify as a rebuttal witness about acts of confinement allegedly committed against her by Highley approximately ten years earlier. We agree and therefore reverse and remand for a new trial.

### Issues

Highley raises four issues for our review. Because we reverse and grant him a new trial we need address only two. We must address the evidentiary error which mandates our reversal and order of a new trial; and we must address an attack upon the sufficiency of the evidence because a meritorious argument would require an acquittal.

I. Whether the court erred by allowing Rhonda Tucker Hammang to testify about alleged acts of confinement committed by Highley? [1]

II. Whether the evidence was sufficient?

### Facts

Vaughn A. Highley and Kay Borders lived together intermittently for nearly eight years before September 6, 1987, the day of the events from which this case arises. They were living apart at the time

---

[1] Highley also asserts the court abused its discretion by failing to give him a continuance to depose Hammang who was not on the State's list of witnesses to be called at trial. He alleges Hammang was a surprise witness and he was "tried by ambush" and is thereby entitled to a new trial on the authority of *Mauricio v. Duckworth* (7th Cir.1988), 840 F.2d 454, *cert. denied* (1988) —— U.S. ——, 109 S.Ct. 177, 102 L.Ed.2d 146 which grants defendants reciprocal discovery rights concerning prospective rebuttal witnesses under certain circumstances. Hammang testified she called the prosecuter's office soon after the incident approximately five months before the trial and said she had some testimony she thought could help convict Highley. But, the woman who answered the phone, when she learned Hammang had not seen Highley since 1979, said she did not see how the testimony would help and would not take Hammang's name or number. The State, while arguing Highley's objections to Hammang's testimony before the court, denied knowledge of Hammang's existence before the day of trial and stated she had just arrived that morning from the Atlanta area and volunteered to testify. However, because we do not believe this issue will be presented at Highley's new trial, we need not address it.

but saw each other nearly every day. Borders had two sons, Dustin, age ten, and Ryan, age six. It is disputed whether Ryan is Highley's biological son.

On the morning of September 6, 1987, Highley arrived at Borders' apartment with the boys who had been visiting with him for the previous two days. Borders was not at home so Highley and the boys entered the apartment through an unlocked back door. Later, when Borders and her friend, Janet Martin, arrived, an argument ensued. As the argument escalated, Borders was able to leave through the back door. She immediately called the police who arrived and ordered Highley, who had armed himself with a .22 caliber semi-automatic rifle which he fired periodically throughout the day, to release Martin and the two boys and surrender himself. He did eventually surrender but only after a seven and one-half hour stand-off with the police.

Highley was charged with three counts of criminal confinement—Martin and the two boys. He was also charged with the attempted criminal confinement of Borders, and with criminal recklessness. He was convicted of the confinement of the two boys but acquitted of all other charges.

Additional facts will be supplied as necessary to explain our decision.

I. *Whether the court erred by allowing Rhonda Tucker Hammang to testify concerning alleged acts of confinement committed by Highley against her?*

Highley took the stand in his own defense. On cross-examination, the state asked him if, approximately 10 years earlier on July 4, 1977, he confined his ex-wife by tying her up in a chair to prevent her from leaving him. Highley answered in the negative.

The state called Highley's ex-wife, Rhonda Tucker Hammang, as a rebuttal witness to contradict and thereby impeach Highley's testimony concerning the alleged confinement. Hammang testified that on July 4, 1977, Highley tied her to a chair and left her in the back yard to prevent her from

leaving him and taking their infant son with her. She also testified to an act not included in Highley's cross-examination—that Highley committed a second act of confinement in February of 1978. She alleged during this second incident Highley prevented her from leaving with the baby by nailing the front door shut, disconnecting the phone, and guarding the back door by sleeping in a chair in front of it for three consecutive nights. She testified she and the baby were able to escape the third day, but that Highley caught them and forced them to return to the house. That night she again escaped with the baby—this time through a bathroom window—but Highley caught them again and returned them to the house. The next day Highley relented and allowed them to leave.

■■■ Here we are dealing with a collateral, and very remote, matter. We first observe that collateral matters may not be the basis for impeachment. A party may inquire into a collateral matter on cross-examination, but the questioner is then "bound by the answer" received; the impeaching party cannot thereafter offer extrinsic evidence to disprove the answer unless the extrinsic evidence would be independently admissible. 12 MILLER, INDIANA EVIDENCE, Sec. 607.106, at 544, 545 (1984); *Hudson v. State* (1986), Ind., 496 N.E.2d 1286; *Wells v. State* (1959), 239 Ind. 415, 158 N.E.2d 256; *Fleenor v. State* (1928), 200 Ind. 165, 162 N.E. 234; *Henson v. State* (1988), Ind.App., 530 N.E.2d 768.

In *Wells, supra,* our supreme court succinctly explained the rationale of the above rule. It held:

[I]f the accused takes the stand in his own defense he automatically raises the issue of his credibility as a witness. Therefore, he may be interrogated on cross-examination regarding his unlawful conduct or convictions from which inferences may be drawn by the jury regarding his credibility as a witness. The rule is well settled with regard to such interrogation that if such witness is asked about other unlawful *acts or conduct* and *denies* them, then the interrogator is

not permitted to pursue the matter further by the introduction of conflicting testimony regarding the disputed fact collaterally injected into the case. This rule is necessary in order that there be a definite end to interrogation regarding collateral matters. Otherwise, litigation might be extended *ad infinitum.* (emphasis in original; citations omitted). *Id.* 239 Ind. at 429, 430, 158 N.E.2d at 263.

The courtroom drama in the case at bar is similar to that in the older supreme court case of *Fleenor, supra.* Fleenor was charged with assault and battery with intent to murder. He took the stand in his own defense and was asked on cross-examination whether he had asked two certain women for dates. The relevance of this question is not apparent from the opinion. He answered in the negative. The State then called these two women apparently to show Fleenor had lied on cross-examination. Our supreme court granted Fleenor a new trial holding:

> [O]ne who seeks to degrade a witness or impair his credibility as such, by answers to questions which are collateral to the issue on trial, is bound by the answers made to his questions, and may not contradict such answers by propounding the same questions to other witnesses who will, by their answers, deny the answers gained upon such cross-examination. *Id.* 200 Ind. at 172–173, 162 N.E. at 236.

■ The State asserts the introduction of Hammang's testimony was not error because it was independently admissible and therefore not collateral. *Duncan v. State* (1975), 166 Ind.App. 302, 335 N.E.2d 827. The State admits that generally evidence of a defendant's character, as shown by other crimes, is not admissible in a criminal case to show the defendant has a propensity to engage in criminal conduct. *Malone v. State* (1982), Ind., 441 N.E.2d

1339. However, exceptions to the general rule apply when the evidence of other crimes is offered to show the defendant's intent, motive, knowledge, malice, sanity, scheme or plan, or capacity to commit the offense, or the criminal actor's identity. 12 MILLER, INDIANA EVIDENCE, Sec. 404.201, at 254. The State argues in its brief that Hammang's testimony is admissable under the intent exception because "[i]f the defendant places his state of mind in issue then the State should be permitted to prove the requisite criminal intent, purpose or knowledge by introducing evidence of his criminal intent under prior similar circumstances. ... the Defendant [Highley] has placed his state of mind [intent] into issue by alleging that he did not have the requisite criminal intent to confine Janet and the children. Therefore Ms. Hammang's testimony concerning her prior confinement by the defendant was independently admissible to show the Defendant's criminal intent when he barricaded Janet and the children." (Appellee's brief pp. 10, 11).

The State's argument is seriously flawed. Obviously intent (knowingly or intentionally) is an element of criminal confinement. *Ind.Code* 35–42–3–3, and the State had the burden of proving every element of the charged offense, including intent, beyond a reasonable doubt. *Montego v. State* (1987), Ind., 517 N.E.2d 74. The jury was so instructed. The fact a defendant denies an element, here intent, does not mean he is raising a new issue—that element is in issue in the State's case in chief. Frankly, we do not understand why Highley's denial of the offense allows the State to prove an element of the offense with evidence that is otherwise inadmissable. Nevertheless, we will analyze the State's assertion of the intent exception to the rule prohibiting evidence of prior acts of misconduct.[2]

---

2. We note defense counsel did not specifically attack Hammang's testimony concerning Highley's intent as being improper on rebuttal nor did he suggest it should have been presented in the State's case in chief. On rebuttal, only rebutting evidence may be admitted. However, the court for good reason and in furtherance of justice, may permit the introduction of evidence

upon the original case on rebuttal. *Ind.Code* 35–37–2–2(3).

We have held the defendant's remedy for the State's impermissible use of rebuttal to "shore up" its case is to present his own rebuttal. *Williams v. State* (1980), Ind.App., 408 N.E.2d 123 (*but see,* P.J. Miller's dissent). However, the rule was best articulated by our supreme court

We must assume the exclusion of other crime evidence applies unless and until the facts and their unique juxtaposition warrant the application of a specifically tailored exception for a specifically accepted purpose. Stuart, *Evidentiary Use of Other Crime Evidence: A Survey of Recent Trends in Criminal Procedure*, (1987) 20 Ind.L.Rev. 183, 209. The State relies on two cases to demonstrate the applicability of the intent exception to this case; *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 and *Bryan v. State* (1983), Ind., 450 N.E.2d 53. In *Boyd,* evidence of an earlier burglary committed by Boyd was admitted in the prosecution of a later burglary to prove that he entered a home with the intention of committing a felony. Boyd had made a statement admitting the first burglary (which occurred at the same home the same week of the second burglary), of distributing the proceeds among his friends, and claiming he was going to return to the same place and get more payment on a debt that was owed to him. This statement was held to be admissible as constituting an exception to the general rule prohibiting evidence of prior acts of misconduct to prove he entered the home with the intention of committing a theft.

The defendant in *Bryan,* was convicted of murdering his wife. Evidence was introduced that on numerous occasions Bryan attacked his wife when she attempted to prevent him from abusing their children. Bryan argued the evidence that he abused his children was inadmissible under the rule prohibiting the introduction of prior acts of misconduct. The court ruled the evidence was admissable under the well settled rule that evidence of prior assaults by the accused on the victim of a homicide are admissible as evidence of the intent to kill. *Harris v. State* (1981), Ind., 425 N.E.2d 112. The court went on to hold the evidence he beat his wife was not rendered inadmissible simply because it also tended to show he beat his children.

*Boyd* and *Bryan* are clearly distinguishable from the case at bar. *Boyd* involves a statement establishing intent and *Bryan* rests upon an entirely different rule of evidence. We cannot sanction the imputation of Highley's intent on September 6, 1987 from similar acts committed approximately ten years earlier against different victims. A reasonable trier of fact could only speculate as to how such remote acts occurring ten years earlier under a different fact situation could have any bearing on Highley's intent in the case at bar.

Such an application of the intent exception would swallow the general rule prohibiting evidence of prior acts of misconduct. For example, burglary convictions often fail for a lack of evidence of the defendant's intent to commit a felony when he is found inside a violated home. *See, e.g., Justice v. State* (1988), Ind., 530 N.E.2d 295. If the intent exception were as broad as the State asserts it is in the present case, the intent element of every burglary prosecution could be satisfied by evidence of an earlier burglary—whether or not it resulted in a conviction. This clearly violates the rationale behind the rule which guards against the fear that a jury may require lesser proofs to convict a person shown to have committed other crimes. Principles of American jurisprudence insist a defendant be tried for what he has done rather than for what he is. 12 MILLER, INDIANA EVIDENCE, Sec. 404.201, at 252. We find Hammang's testimony concerning the alleged prior acts of confinement was not independently admissible. Further, it was entirely collateral and as

in *Hollowell v. State* (1971), 256 Ind. 467, 269 N.E.2d 755, 759 as follows:

> Therefore, even though the court permits a witness to testify during rebuttal regarding a matter which, in fact, is not in rebuttal but is a matter related to the state's case in chief, the irregularity will not be treated as reversible error unless *under the circumstances the appellant was prevented from presenting rebuttal evidence thereto.* (citations omitted; emphasis ours).

The circumstances in the case at bar were particularly eggregious for the defendant. Hammang was a surprise witness. Highley had no opportunity to depose her or to conduct discovery into the events of 1977 and 1978 to prepare a rebuttal.

such could not have been introduced to impeach Highley.

Finally, the state asserts that, even if the introduction of Hammang's testimony was erroneous, in light of the overwhelming evidence against Highley the error was harmless. We cannot agree. The evidence against Highley was not overwhelming. The jury acquitted Highley of a count of confinement, a count of attempted confinement, and a count of criminal recklessness all arising out of the same set of circumstances from which his convictions stood. The jury submitted a recommendation that Highley receive a "reduced sentence" because they believed Highley had "no intent to harm the children with the weapon." The likelihood Hammang's testimony had an unfairly prejudicial and inflammatory effect upon the minds of the jury is sufficiently high that we cannot consider its erroneous introduction harmless. We must reverse Highley's conviction and remand for a new trial.

*II.  Whether the evidence was sufficient to support Highley's convictions?*

As we noted earlier, we must address this issue because a successful argument would require us to order Highley's acquittal rather than a new trial. Had the State failed to present sufficient evidence at Highley's first trial it could not be afforded another opportunity to make its case.

Highley asserts he could not be convicted of confining the children because he stood *in loco parentis* to them at the time and was therefore, absent a court order, under no duty to surrender the children to the police. He argues because the boys call him "Daddy", know of no other father, and had been left in his care by Borders that, absent a court order, the police had no authority to demand he turn the boys over (and he no corresponding duty to surrender them).

The evidence most favorable to the State indicates that although Highley is a very significant person in the boys' lives, he is not a parent. Moreover, Highley has presented no authority nor are we aware of any that persons standing in such a relationship are exempted from criminal sanctions for the confinement of children. Even if he had been a parent the sanctions would attach. In *Matter Of Bridges* (1985), Ind.App., 474 N.E.2d 529, we affirmed an ajudication of delinquency based upon a mother's conviction of the confinement of her own child. We believe Highley's argument is best characterized as an attack upon the sufficiency of the evidence and as such, unless as here we find another error requiring reversal, we must affirm the conviction if there exists substantial evidence of probative value from which the jury could have inferred guilt beyond a reasonable doubt. *McDonald v. State* (1987), Ind., 511 N.E.2d 1066.

Janet Martin testified Highley ordered her into the bedroom with the boys and then barricaded the door to the bedroom shut with a dresser. Detective Ellis testified Highley was armed with a loaded rifle when he surrendered. He also described the location of the bullet holes in the house where Highley had fired the rifle during the standoff. Captain of Detectives Oatis testified he asked Highley to relinquish the gun and release Martin and the boys to which Highley responded "no f——in' way, I'm not giving up the f——in' gun, you assholes want to come in and get it, come on, but you better bring an ambulance cause you're going to need it." This evidence is sufficient to support Highley's convictions.

Based on the foregoing, we reverse Highley's convictions and remand the cause for a new trial.

SULLIVAN, J., concurs.

CHEZEM, J., concurs in result.