Barry Dale JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 71A04–8809–CR–303.

Court of Appeals of Indiana,
Fourth District.

May 16, 1989.
Transfer Denied Aug. 29, 1989.

Anthony V. Luber, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Judge.

Barry Dale Johnson appeals his convictions, received after a jury trial, of battery, criminal confinement, and intimidation. Johnson's trial was bifurcated in order that Johnson's earlier battery conviction committed against the same person as the victim in the present case. Florence Stokes, could be proven in the second phase of the trial in order to enhance the present battery conviction from a class A misdemeanor to a class D felony. We reverse Johnson's convictions and remand for a new trial because of an evidentiary error, the admission of remote assaults by Johnson upon Stokes.

### Issues

Johnson raises eight issues. We address two. We address the sufficiency of the evidence because had Johnson's arguments been meritorious he would have been entitled to an acquittal. We also address an evidentiary error that entitles Johnson to a new trial.

I. Whether the evidence was sufficient to support Johnson's convictions?

II. Whether the trial court erred in admitting testimony about Johnson's prior acts of violence toward Stokes?

### Facts

The facts most favorable to the verdict demonstrate that on the night of October 31/morning of November 1, 1987, Johnson arrived at the home of Florence Stokes, grabbed her by the throat, lifted her, slammed her against the wall, threw her down, hit her with his fists, grabbed her fingers and bent them back. He then forced her into a car and drove to a vacant house where he parked and threatened to kill her if she refused to drop the charges she had filed against him regarding an altercation occurring earlier that week on October 25, 1987.

During that earlier altercation of October 25, 1987, Johnson had broken a window at Stokes's house, entered, and fought with her son. Stokes reported to the police and later to the prosecutor that Johnson had broken into her home armed with a shotgun. She obtained a protective order from the small claims court by alleging the same set of facts. She later recanted by admitting that Johnson was not armed with a shotgun when he broke into her house. Instead it was her son who was armed with the shotgun during the altercation. She admitted she lied in order to encourage prompt police response.

Johnson and Stokes had been involved in an "off and on" romantic relationship since 1980. During the first phase of the bifurcated trial, Stokes was permitted to testify about three prior acts of violence by Johnson against her dating back to 1980. One of these, occurring in 1982, resulted in Johnson being convicted of battery. During this first phase, Stokes testified to the beating underlying the conviction without mentioning that Johnson had been prosecuted and convicted as a result. At the close of the first phase the jury returned verdicts against Johnson for battery (class A misdemeanor), criminal confinement, and intimidation.

During the second phase, Stokes was permitted to testify that the 1982 battery she had described earlier resulted in Johnson being convicted of battery. Therefore, Johnson's class A misdemeanor battery conviction was enhanced to a class D felony pursuant to IND.CODE 35–42–2–1(2)(D). The two convictions for the present battery were merged into one, the felony conviction.

Additional facts are supplied below.

*Decision*

## I. Whether the evidence was sufficient to support Johnson's convictions?

■ As noted earlier, we must address this issue because a meritorious argument would require us to order Johnson's acquittal. Had the State failed to present sufficient evidence at Johnson's first trial it could not be afforded another opportunity to make its case. *Highley v. State*, (1989) Ind.App., 535 N.E.2d 1241.

Johnson first attacks his conviction of intimidation. Johnson was charged, and the jury was instructed, under the following section of IND.CODE 35–45–2–1 which defines intimidation:

> Sec. 1. (a) A person who communicates a threat to another person, with the intent that:
>
> (2) the other person be placed in fear of retaliation for a prior lawful act:

commits intimidation, a Class A misdemeanor.[1] (Johnson's offence was enhanced to a Class D felony because he *threatened to kill*, a forcible felony. I.C. 35–45–2–1(b)(1)(A).)

Johnson argues the evidence most favorable to the verdict indicates he threatened to kill Stokes in retaliation for filing charges against him for the October 25, 1987 incident. He argues that because Stokes filed false charges against him, an *unlawful* act, he cannot be convicted of threatening her with retaliation for a prior *lawful* act.

■ The State admits in its brief that Stokes's report was "probably actionable" as a false police report but argues her resort to the prosecutor and the courts for protection was "certainly lawful." We agree. Stoke's report was partly true and partly false. That she petitioned the police and the courts for protection from Johnson was entirely justified and, under the circumstances, perhaps essential to her survival. Stokes's exaggeration of the facts does not excuse Johnson from threatening to kill her in retaliation for petitioning the authorities for protection from him.

■ Sufficient evidence exists to affirm a conviction, absent an evidentiary error as in this case, if there exists substantial evidence of probative value from which the jury could have inferred guilt beyond a reasonable doubt. *McDonald v. State* (1987), Ind., 511 N.E.2d 1066; *Highley, supra*. Stokes testified that Johnson, after beating and abducting her, told her that he would kill her if she did not drop the charges from the previous Monday. This would otherwise constitute sufficient evidence to affirm Johnson's conviction for intimidation.

■ Stokes testified that Johnson arrived at her home, grabbed her by the throat, lifted her and slammed her against the wall, threw her down, hit her with his fists and grabbed her fingers and bent them back. This would otherwise constitute sufficient evidence to sustain the battery conviction.

■ Stokes testified that immediately after the above described beating, Johnson stated "let's go" to which she responded: "okay, please don't kill me, don't hurt me no more." She testified she believed Johnson would kill or continue to beat her if she resisted him. Johnson then took Stokes in a car to a vacant house. This would otherwise constitute sufficient evidence from which the jury could have inferred that Johnson knowingly or intentionally removed Stokes by force from one place to another as proscribed by IND.CODE 35–42–3–3 (criminal confinement).

## II. Whether the trial court erred in admitting testimony about Johnson's prior acts of violence toward Stokes?

During the first phase of the bifurcated trial, Stokes was permitted to testify about three earlier occasions in which Johnson inflicted violence upon her or her property. She testified that in 1980 Johnson hit her in the stomach which caused her stomach muscles to knot up. She testified that in April of 1986 Johnson broke the windows of her house by throwing bricks or chunks of asphalt at them.

Stokes testified that in May of 1982 Johnson kicked in her front door and entered her house. She ran out the back door but Johnson caught her, beat her, struck her with and threatened her with a shotgun. During the second phase of the trial, Stokes testified, and the State showed by

---

**1.** Johnson was *not* charged with the previous section of the statute, I.C. 35–45–2–1(a)(1), which provides:

> Sec. 1. (a) A person who communicates a threat to another person, with the intent that:

> (1) the other person engage in conduct against his will; commits intimidation.

introducing court docket sheets, that Johnson was convicted of battery for this incident.

■ We must assume the exclusion of other crime evidence applies unless and until the facts and their unique juxtaposition warrant the application of a specifically tailored exception for a specifically accepted purpose. Stuart, *Evidentiary Use of Other Crime Evidence: A Survey of Recent Trends in Criminal Procedure,* (1987) 20 Ind.L.Rev. 183, 209. *Highley, supra.* The rule prohibiting the introduction of prior acts of misconduct guards against the fear that a jury may require lesser proofs to convict a person shown to have committed other crimes. 12 MILLER, INDIANA EVIDENCE, Sec. 404.201, at 252. *Highley, supra.* Generally, evidence of a defendant's character, as shown by other crimes, is not admissible in a criminal case to show the defendant has a propensity to engage in criminal conduct.[2] *Malone v. State* (1982), Ind., 441 N.E.2d 1339. However, exceptions to the general rule apply when the evidence of other crimes is offered to show the defendant's intent, motive, knowledge, malice, sanity, scheme or plan, or capacity to commit the offense, or the criminal actor's identity. 12 MILLER, INDIANA EVIDENCE, Sec. 404.201, at 254.

■ The trial court in the case at bar recognized the need for a bifurcated proceeding to keep evidence of Johnson's prior conviction of a battery against Stokes from prejudicing the jury before the second or enhancement phase of the trial. Proceedings are bifurcated in cases where prior convictions serve to enhance a present conviction in recognition that evidence of prior crimes is generally inadmissible in criminal cases, because it has no tendency to establish the guilt or innocence of the accused but, if effective at all, can serve only to prejudice or mislead or excite the minds

and inflame the passions of the jury. *Lawrence v. State* (1972), 259 Ind. 306, 286 N.E.2d 830 (bifurcation required for habitual criminal enhancement). The necessity of the bifurcated procedure has been recognized for other enhancement proceedings that are similar to the one in the case at bar where an offense is elevated from a class A misdemeanor to a class D felony with proof of an earlier similar conviction. For example, the bifurcated procedure has been found to be necessary for the enhancement of second convictions of marijuana or hashish offenses. *Sweet v. State* (1982), Ind., 439 N.E.2d 1144, and drunk driving. *Smith v. State* (1983), Ind.App., 451 N.E.2d 57. The rationale of these cases obviously stems from a recognition that evidence of repeated commision of similar crimes is not sufficient to establish a common scheme or plan. *Burch v. State* (1986), Ind.App., 487 N.E.2d 176 (*trans. denied* ).

We are at a loss to understand why the trial court in the present case recognized the necessity of a bifurcated proceeding to shield the jury from being prejudiced by evidence of Johnson's prior conviction of a battery against Stokes and at the same time allowed Stokes to testify about the particular battery for which Johnson was convicted. It would seem to us that, if the evidence was admissible at all, the most competent evidence, that of the conviction itself, would be admissible.

Further, it would appear to us that evidence of the earlier crime *without* evidence of the conviction could be more prejudicial than evidence of the crime *and* the resulting conviction. After the first phase of the trial, the jury could conclude that, while the evidence for the present offense is insufficient to convict Johnson, they should nevertheless convict him, albeit improperly, for the earlier crime because otherwise it would appear to them that Johnson would escape punishment for this earlier offense.

---

2. There exists in Indiana an exception to the general rule prohibiting evidence of the defendant's prior criminal acts *to prove character.* When incest, sodomy, criminal deviate conduct, or child molesting are charged, evidence of similar conduct is admissible under the "depraved sexual instinct" exception. 12 MILLER, INDIANA EVIDENCE, Sec. 404.216, at 290; *Cobbs v. State* (1975), 264 Ind. 60, 338 N.E.2d 632.

It would appear the dissent would also recognize an exception for crimes involving violence within an on-going relationship. If we were to recognize exceptions for patterns of behavior—professional burglars, thieves, prostitutes, bad check artists, etc.—we would soon have no general rule prohibiting evidence of prior acts of misconduct. We must leave the recognition of any new exceptions to the wisdom of our supreme court.

The State argues the evidence of the three prior acts of violence by Johnson against Stokes and her property is admissible under the common plan or scheme exception to the rule prohibiting evidence of prior acts of misconduct to show Johnson's common plan or scheme to abuse and terrorize Stokes. Because the question of the admissibility of prior acts of misconduct has been addressed time and time again in our courts—377 Indiana cases are listed under the appropriate West headnotes, we must resort to a hornbook to gain some perspective for our analysis. The polestar of our analysis lies in balancing undue prejudice against the probative value of the evidence in question. Evidence of other criminal activity may be excluded if the court finds that the probative value is outweighed by its tendency to prejudice the defendant's case unfairly or mislead the jury, *even if an exception to the general rule of inadmissibility of such evidence would apply. Montgomery v. State* (1980), 274 Ind. 544, 412 N.E.2d 793. The potential for unfair prejudice to the defendant's case may be outweighed by the probative value when the evidence is offered under one of the exceptions to the rule, but it is not eliminated. Accordingly, the court must balance the probative value of the evidence against the potential for improper use by the jury even when the evidence is offered for a proper purpose. 12 MILLER, INDIANA EVIDENCE, Sec. 404.204, at 258.

Evidence of other crimes may be admitted to show a common scheme or plan; but the purpose of the evidence will not be the same in all cases. Proof of a plan may show the motive, intent or the identity of the defendant as the perpetrator of the crime charged. Indiana decisions do not always report the specific use to which the "common scheme or plan" evidence has been put. However, evidence which does nothing more than to show that the defendant has committed prior crimes is never admissible under this exception. *Accord-*

*ingly, the admissibility of evidence of other crimes to show a common scheme or plan should be determined with reference to the issue to be proved by the evidence.* 12 MILLER, INDIANA EVIDENCE, Sec. 404.215, at 284–289. For example, in *Williams v. State* (1985), Ind., 481 N.E.2d 1319, a common plan or scheme was admissible to prove an *intent to steal* in a burglary trial. In *Burch, supra,* a common plan or scheme was admissible because "identity was *the* primary issue." *Id.* at 179 (emphasis in original).

The prior violent acts of Johnson against Stokes are of no probative value or relevance because they do not tend to prove any disputed fact in issue. *Norton v. State* (1980), 273 Ind. 635, 408 N.E.2d 514. As stated above, a common scheme or plan may be proven to show motive, intent, or identity. None of these are seriously in issue in this case. Johnson's identity is not an issue; he and the victim had been intimately acquainted for eight years. While battery and criminal confinement require the State to prove the defendant acted with the *mens rea* of knowingly or intentionally, no one has or could seriously maintain that the beating Stokes received or her subsequent abduction were the result of an accident—not committed knowingly or intentionally.

Therefore, the scales have been tipped. Even if we were to hold the common plan or scheme exception applies in this case, we would reverse because the probative value of the evidence could not outweigh the prejudicial effect Johnson received from the introduction of the evidence in question. The evidence had little, if any, probative value. The State does not argue Johnson suffered no prejudice, nor could it. The distinct possibility the jury improperly convicted Johnson of the 1982 battery or required lesser proof to convict for the present offenses cannot be ignored.[3]

---

3. Similarly, the State does not argue harmless error, nor could it. The State's case depended upon the testimony of one witness—that of the complaining witness, Florence Stokes. The sufficiency question concerning the intimidation charge we addressed earlier was submitted to the jury. They were entitled to find that the unlawful, false character of Stoke's police report exonerated Johnson from liability on the count of intimidation. Concerning the conviction for criminal confinement, vigorous cross-examination attempted to establish that Stokes voluntarily went for a ride in the car with Johnson.

However, we also reverse because the common plan or scheme exception, or any other exception for that matter, is not applicable in this case. The State cites many cases in which prior assaults against the victim by the defendant were properly admitted in murder trials, *e.g. King v. State* (1987), Ind., 508 N.E.2d 1259. The State asserts, without citing any cases, that this exception is applicable in battery cases. The State is mistaken. Indiana's courts have traditionally held that evidence of a defendant's prior threats or acts of violence toward the decedent is admissible in murder trials as proof of *malice*. Even though malice is no longer an element of the crime of murder in Indiana, such proof will likely remain admissible as proof of intent in murder trials. 12 MILLER, INDIANA EVIDENCE, Sec. 404.210, at 274. The applicability of this exception is limited to murder cases and does not apply in the case at bar.

Our supreme court recently addressed the common plan or scheme exception in the case of *Clark v. State*, (1989) Ind. 536 N.E.2d 493 (Justices Givan and Pivarnik dissenting). Clark was convicted of possession of heroin (more than three grams) and cocaine. The State had admitted evidence of a 1974 conviction for possession of heroin and cocaine and a 1980 conviction for conspiring to distribute heroin and cocaine. The court reversed the convictions holding that "[t]o call the evidence admitted in this case proof of 'common scheme or plan' is simply to say that one who committed a similar crime more than a decade ago may now be guilty of doing it again." *Id.* at p. 495 of handdown version.

Because of the breadth of articulate analysis in *Clark*, we will rely on it extensively. Writing for the majority, Chief Justice Shepard explained that Indiana cases describe two branches to the common plan or scheme exception. The first branch permits proof of a prior offense committed with an identical *modus operandi* when the identity of the perpetrator is in genuine issue. *Penley v. State* (1987), Ind., 506 N.E.2d 806. The second branch permits proof of a prior offense as evidence of a preconceived plan that includes the charged crimes. *Id.*

This second branch of the common plan or scheme exception, with which we are concerned, requires that the uncharged or prior crime be *tangibly connected* to the one for which the defendant is on trial. Some *nexus* is required. *Clark, supra.* The *Clark* court used as an example the case of *State v. Toshishige Yoshino* (1961), 45 Hawaii 206, 364 P.2d 638 where evidence of an earlier robbery was held admissible in the trial of a second where the name of the second victim was procured from the first. The *Clark* court also cited *Lewis v. United States* (10th Cir.Okl.1985), 771 F.2d 454, *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 where testimony that the defendant burglarized a garage store in order to procure a cutting torch was admissible in his trial for burglarizing a post office by using the torch.

The *Clark* court then reviewed some Indiana cases which held a common scheme or plan could be used to prove drug dealing. The court relied on, and quoted the following excerpt from, *Sweet v. State* (1986), Ind., 498 N.E.2d 924 [4]:

The November transactions are not so remote in time or circumstance as to be irrelevant. The February transaction precedes the charged transactions by nine months. Although more remote in time, the circumstances of the transaction tend to prove a common scheme and plan of *conducting a drug dealing business for profit*. *Id.* at 928 (emphasis added).

The prior acts of misconduct proven in *Toshishige Yoshino, supra,* and *Lewis, supra,* were indicative of much more than a behavior pattern or a propensity to engage in criminal conduct. They were tangibly connected to the offenses for which the defendant was on trial in each case. Likewise, the prior acts of misconduct in the *Sweet, supra,* case evidenced an on-going drug dealing business; obviously, the running of a business is a common plan or scheme.

In the present case, Johnson's prior acts of violence have a single nexus—albeit an important nexus—the victim, Flor-

---

**4.** *Sweet* is the same case after remand we cited earlier. The earlier case established the requirement of a bifurcated proceeding for the enhancement of a second conviction for a marijuana or hashish offense.

ence Stokes. But the earlier crimes are not tangibly connected to each other or to the present crimes. They are not unusual, distinctive, or similar to each other or to the present beating, abduction, and threat in any way.

Nothing indicates Johnson's crimes arose out of a common plan or scheme. Instead, it would appear that they all arose out of separate, distinct crisis situations in the on-going saga of Johnson's and Stokes's "off and on" romantic relationship. All of the incidents are separated by significant periods of time. The 1980 beating consisted of a punch to the stomach. The 1982 break-in and beating occurred while Johnson was armed with a shot gun with which he struck Stokes. The 1986 incident consisted of Johnson throwing bricks or asphalt through Stokes's windows, apparently a crime against property alone.

If we were of the mind to take judicial notice of certain popular sociological concepts and terms—which we are not, nor should we be—we might use the term "wife-beater," or a "significant-other beater" to describe Johnson. Better yet, we might say that Johnson and Stokes suffer from "spousal abuse syndrome." While we were at it, we might recognize alcoholism, drug dependency, and kleptomania as diseases. We do not doubt for a minute that these terms describe important, valid concepts. What they have in common is that they describe chronic behavioral patterns.

 *Behavioral patterns are not common plans or schemes.* No one plans or schemes to become an alcoholic or a wife beater. We are unaware of any case that permits the introduction of prior incidents of, or arrests for, intoxication to prove a present public intoxication or drunk driving offense. Nor are we aware that a defendants propensity to steal is admissible to prove theft. In *Clark, supra,* our supreme court held a propensity to possess, and deal in heroin and cocaine is not admissible to prove possession of heroin and cocaine. Today, we will not allow evidence that Johnson has the propensity to beat Stokes to prove a present beating.

Johnson's prior acts of violence evidences a pattern of abuse against Stokes. He *is* a "wife or significant-other beater." However, principles of American jurisprudence insist a defendant be tried for what he has done rather than for what he is. 12 MILLER, INDIANA EVIDENCE. Sec. 404.-201, at 252. *Highley, supra.*

Therefore, Johnson's convictions must be reversed and remanded for retrial.

SULLIVAN, J., concurs.

CHEZEM, J., dissents with separate opinion.

CHEZEM, Judge, dissenting.

I concur on the first issue of sufficiency of evidence. The evidence was sufficient to support Johnson's conviction.

I respectfully dissent on the second issue. I do not think the trial court erred in admitting testimony about Johnson's prior acts of violence toward Stokes.

A pattern of on going abusive behavior toward a wife or girlfriend over a long period of time is no less probative than the same behavior in a matter of a few days. The nexus between the prior acts and the one charged is the continuing relationship between Johnson and Stokes and Johnson's determination to manipulate and to remain in control of that relationship. This pattern goes to show intent. If such evidence is prejudicial to the defendant, its probative value out weights the prejudice.

I would affirm the trial court.